979 So.2d 512 (2008)
Maria A. REDLER
v.
GIORLANDO'S RESTAURANT CORPORATION.
No. 07-CA-658.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
Rehearing Denied March 26, 2008.
*513 William R. Mustian, III, Attorney at Law, Metairie, LA, for Plaintiff/Appellant.
Harris M. Dulitz, Attorney at Law, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Plaintiff/appellant, Maria Redler ("Redler"), appeals a judgment of the Workers' Compensation Court which granted temporary total disability benefits and payment of medical expenses, but which denied penalties, attorney's fees, and court costs.
The facts of the accident itself and the resulting injuries to Redler are not contested. The accident occurred on November 12, 2004 when Redler fell while working at Giorlando's Restaurant ("Giorlando's"). Her lower back hurt her and *514 she left work early. Redler testified that she did not go to the emergency room, but first sought medical treatment with Dr. Clevis Parker ("Dr. Parker") on November 15. Redler learned she had a compression fracture, but she had never had back trouble prior to this. She telephoned John Giorlando ("Giorlando"), who operated the restaurant, that day to tell him that she was hurt and unable to return to work. She did not remember having any conversation with him about payment of medical expenses before the mediation proceedings. She did not request her medical bills be sent to Giorlando's and did not remember if she requested any medical reports be sent. Giorlando never presented her with a medical authorization. Redler telephoned Giorlando and, although he told her he was doing something about her bills, nothing was ever done. Mediation took place in May 2005. At that time, Giorlando offered to help with her medical bills. She told him she needed an MRI, but she did not hear from Giorlando again. Her medical insurance was with Blue Cross, which refused to pay for the MRI, although it did pay for her visits to Dr. Parker.
Giorlando operated Giorlando's at the time of the accident and had done so since 1999. He testified that he and his brother formed Giorlando Brothers LLC in 2004, in order to buy the restaurant from his father, and that the sale was perfected in March 2005. Prior to that purchase, his father made the major decisions regarding the business. Giorlando thought the restaurant had insurance with the Louisiana Workmen's Compensation Company ("LWCC").
Giorlando did not see Redler fall but was there when it happened and helped her up afterwards. After her fall, Redler worked the rest of the day and then never returned. A couple of days after the accident, Giorlando spoke on the telephone with Redler, who told him that she had a fractured back and that her doctor told her she would be unable to work for six weeks. Redler did not request that he pay any of her medical bills or wages. Giorlando told her he would get insurance forms for workers' compensation, and he did telephone LWCC about a week later requesting claim forms. He did not receive any such forms. About one month later, he spoke with Redler a second time, at which time he told her he was still waiting for the insurance form. Giorlando again telephoned LWCC but did not receive any insurance information. Giorlando continued to wait for claim forms from LWCC, and it was not until a week before mediation that he spoke with his insurance agent. At that time, the agent informed him he did not have workers' compensation coverage. Giorlando did not realize he was uninsured  when he gets insurance information he files it without looking at it.
Just after the mediation, Redler told Giorlando she needed an MRI and would furnish him with the medical records and bills. At that time, Giorlando offered to pay for the MRI. He told Redler he believed she needed some compensation and that he would "make some compensation even over and above [the MRI] because I did not deny the fall." After Giorlando was notified that Redler had an attorney "things changed." He did not hear from her again until he was contacted by her attorney. Giorlando did not receive any reports or bills from her treating physicians until the mediation conference, at which time he first saw Dr. Parker's note stating, "Maria Redler is unable to attend work from 11/15/04 to present due to illness and is under the care of Dr. Clevis Parker." He tried to call Dr. Parker's office to get some information on the reason for the note. He did not speak with *515 the doctor. By the time of trial, the MRI had never been authorized.
Following the mediation conference, Redler obtained counsel. In August 2005, counsel forwarded Redler's medical records to Giorlando's attorney, along with requests for authorization for an MRI and a visit to an orthopedist of her choice. In December 2005, a prescription for physical therapy was mailed to counsel; in April 2006, Dr. Charles Billings' ("Dr. Billings") report was forwarded. Dr. Billings reviewed the X-rays and recommended an MRI of the neck and spine. Giorlando's attorney responded that, after reviewing the report, he found no objective evidence to justify MRI studies, and concluded, "This is a classic case of where the legal and medical professions differ. In essence, Dr. Billings, as a matter of caution, disregarding financial reality, recommended testing to avoid any potential medical malpractice claim being asserted against him."
In evidence was an X-ray report taken on November 15, 2004 by Diagnostic Imaging Services, showing that Redler suffered from a compression fracture and the endplate of L1; however, the age of the fracture could not be determined. Dr. Parker's report and deposition stated that Redler's symptoms began after falling at work. He prescribed a steroid injection, pain medication, an anti-inflammatory, and a muscle relaxer. Redler was in too much pain to return to work. In May, Dr. Parker felt Redler could return to normal activity.
Following the presentation of the evidence, the court ordered that Redler undergo an MRI and ordered Giorlando to pay the bill. The case was held open pending results of the MRI. Then, after finding that Redler was injured in the course and scope of her employment and granting temporary total disability as well as medical expenses, the court determined that "because of the circumstances following this alleged injury, and because of misunderstandings on the part of both Employer and Claimant, the Court specifically declines to invoke penalties or award an attorney fee in this matter. Costs are to be borne by the respective parties." This portion of the judgment is the sole issue on appeal.
LSA-R.S. 23:1201 states, in pertinent part, as follows:
F. Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that *516 the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
The purpose of imposition of penalties and attorney's fees is to discourage indifference and undesirable conduct by employers and insurers.[1] Awards of penalties and attorney's fees in workers' compensation cases are essentially penal in nature.[2] The crucial inquiry in determining whether to impose penalties and attorney's fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action.[3] The determination of whether an employer or insurer should be cast with penalties and attorney's fees in a workers' compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review.[4] The fact that an employer is subjectively motivated to avoid paying compensation is not determinative.[5] Neither is the fact that an employer loses a disputed claim. The employer must adequately investigate the claim.[6] The crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action.[7] Whether the employer's act is arbitrary, capricious or without probable cause depends upon the facts existing and known to the employer at the time its decision as to benefits was made.[8]
Statutes imposing liability for penalties and attorney's fees must be strictly construed to prevent an employer from being penalized for relying in good faith on valid defenses.[9] In construing the term "reasonably controverted" as contemplated by the statute, our courts have found that in order to preclude the imposition of penalties and attorney's fees under LSA-R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.[10]
Here, Giorlando was aware that Redler had fallen, and, in his own words, did not "deny the fall." Within a few days of the accident, Giorlando was informed that Redler had sustained a back injury and would *517 be unable to work. Giorlando admitted that Redler was entitled to compensation, but he did not pay any benefits, medical or otherwise, because he did not receive any medical bills from her. By his own admission, Giorlando knew that Redler had sustained a compensable injury and was entitled to compensation benefits. Redler filed a compensation claim in January 2005. It was not until one week before mediation that Giorlando finally telephoned his insurance agent to inquire about his coverage.
Giorlando did not pay any medical expenses until ordered to do so by the trial court. However, it is not clear from the record if any medical bills were ever presented to Giorlando or to his attorney. There are no other bills in the record.
Based on the above facts, we find that Giorlando did not adequately investigate Redler's claim and did not articulate an objective reason to deny payment of disability benefits. Employers must demonstrate that they made reasonable efforts to medically ascertain the worker's exact condition before denying benefits.[11] An employer has an ongoing duty to review medical reports concerning an injured employee's disability, and may not deny or discontinue compensation based on inconclusive medical reports.[12] There was no evidence to reasonably counter Redler's claim that she was injured and unable to work for the period of disability determined by the trial court. Giorlando never questioned that Redler had been injured at work. The only reason Giorlando gave for failing to pay benefits was his mistaken impression that he had compensation insurance and that he was unable to obtain claim forms. We find the trial court erred in finding that Giorlando was not arbitrary and capricious in failing to pay disability benefits and that penalties are due on this claim.
However, in the absence of evidence that medical bills were presented to Giorlando, he was not arbitrary and capricious in failing to pay medical expenses.
The factors to be considered in the imposition of the attorney's fee in workers' compensation cases include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case.[13] There is no requirement that the trial court hear evidence concerning the time spent or the hourly rates charged to make an award of attorney's fees since the record will reflect much of the services rendered.[14] Considering the appropriate factors, we find that attorney's fees in the amount of $3,000 to be appropriate.
Redler also argues that the trial court erred in ordering costs to be borne by the respective parties. Regarding the allocation of court costs, LSA-R.S. 23:1317(B) provides that the allocation of such lies within the workers' compensation judge's discretion and can be reversed only upon a showing of an abuse of that discretion. Given that neither party prevailed fully on the merits, we find no abuse of the workers' compensation judge's discretion in the assessment of costs.[15]
*518 For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. We reverse that portion of the judgment finding that Giorlando was not arbitrary and capricious in failing to pay compensation benefits, and assess the statutory penalty of $2,000. We also award $3,000 in attorney's fees. In all other respects, the judgment is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41.
[2] Id.
[3] Authement v. Shappert Eng'g, XXXX-XXXX (La.2/25/03), 840 So.2d 1181 (quoting Williams, supra).
[4] Authement, supra.
[5] Burrow v. Delta Container Corp., 05-316 (La.App. 5 Cir. 11/29/05), 923 So.2d 158, writ denied, 2005-2583 (La.4/17/06), 926 So.2d 516.
[6] Burrow, supra.
[7] Burrow, supra; Williams, supra.
[8] Burrow, supra.
[9] See, Burrow, supra; Chateau v. City of Kenner, 97-1006 (La.App. 5 Cir. 5/13/98), 712 So.2d 256, writ denied, 98-1545 (La.9/18/98), 724 So.2d 769.
[10] Burrow, supra.
[11] Tillmon v. Thrasher Waterproofing, XXXX-XXXX (La.App. 4 Cir. 3/28/01), 786 So.2d 131
[12] Id.
[13] Atwood v. Ewing Timber, Inc., 36,732 (La. App. 2 Cir. 1/29/03), 836 So.2d 1199, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1134.
[14] Id.
[15] See, e.g., Barber Bros. Contracting Co., L.L.C. v. Morgan, XXXX-XXXX (La.App. 1 Cir. 5/9/03), 849 So.2d 563.