CLARENCE E. McMANUS, Judge.
 

 li>The Shaw Group, Inc. files this appeal from a workers’ compensation judgment in favor of employee, Gerald Washington. For the reasons which follow, we affirm the workers’ compensation court’s judgment.
 

 STATEMENT OF THE CASE
 

 On December 14, 2005, while working in the course and scope of his employment with The Shaw Group, Gerald Washington injured his neck and back when a pipe fell and hit his neck. Washington was treated in the emergency room at St. Elizabeth’s Hospital in Gonzales, LA for the injuries he sustained. At the time of the accident, the Shaw Group was insured by a policy of workers’ compensation insurance issued by Zurich Insurance Company (“Zurich”). F.A. Richard and Associates, (“FARA”), was Zurich’s workers’ compensation third party administrator. Indemnity benefits were paid beginning January 24, 2006 and medical benefits were paid for Washington.
 

 |3On January 9, 2006, Washington sought treatment with his choice of physician, Dr. Jyoti Pham. Dr. Pham found Washington suffered from a cervical strain and low back pain as a result of the accident. A cervical MRI was performed and showed a cervical disc herniation. Washington continued to treat with Dr. Pham
 
 *14
 
 who prescribed pain medication and recommended epidural steroid injections. Washington took the pain medication but continuously refused the injections due to a fear of needles.
 

 Based on the MRI findings, Dr. Pham referred Washington to Dr. Horace Mitchell, a neurosurgeon, for a neurological evaluation in March 2006. Washington was first examined by Dr. Mitchell, his choice of a neurosurgeon, on April 10, 2006. Dr. Mitchell ordered a cervical my-elogram and a CT scan. Dr. Mitchell recommended epidural steroid injections, or if preferred an anterior cervical discectomy with a fusion and BACK cage. On September 11, 2007, Dr. Mitchell recommended a repeat cervical MRI because it had been over a year since the first MRI and Washington’s symptoms were worse. Washington continued to treat with Dr. Mitchell, who continued to recommend surgery. Washington still refused the epidural steroid injections and indicated he would like to go straight to surgical intervention.
 

 The Shaw Group, through FARA, requested a second medical opinion (“SMO”) for Washington from Dr. Anthony Ioppola. Dr. Ioppola reviewed Washington’s medical records and performed an examination. He issued a report June 17, 2006 recommending an EMG/nerve conduction test and conservative care. He concluded there was no indication for surgery or epidural steroid injections. Based on Dr. Ioppola’s findings, FARA denied Washington’s claim for surgery and epidural steroid injections recommended by Dr. Mitchell.
 

 |4FARA then requested the appointment of an independent medical examiner (“IME”) in the field of neurosurgery and Dr. Carl Culicchia was appointed. He examined Washington on September 13, 2006. Dr. Culicchia issued a report that same day and stated that he had reviewed Washington’s medical records containing radiology reports from the cervical MRI and CT scan that were hard to read, a nerve conductivity velocity study, a lumbar MRI report, a letter from Dr. Ioppola, and progress notes from Dr. Mitchell. Dr. Cu-licchia concluded that, based on the available data, there was no neurological disease or injury and he would not offer surgery to Washington. Dr. Culicchia stated he would review the missing MRI studies and render further opinions.
 

 On January 23, 2007, defendant’s counsel sent a written request to Dr. Culicchia asking that his IME report address whether he felt cervical surgery was reasonable and medically necessary as a result of the accident and whether Washington could return to work. Defense counsel also sent correspondence to FARA on March 29, 2007 indicating that Dr. Culicchia had not completed a supplemental report, even though he had been provided the MRI films. Defense counsel also sent correspondence to Washington’s counsel on April 13, 2007 attaching an addendum from Dr. Culicchia dated April 4, 2007. However, the letter advised that this report did not address the core issues, including whether Washington had reached maximum medical improvement, was able to work, or whether he needed surgery. Defense counsel agreed to obtain a supplemental report from Dr. Culicchia. On July 10, 2007, defense counsel sent correspondence to Washington’s attorney including Dr. Culicchia’s report dated May 30, 2007 and indicated that indemnity benefits would be discontinued. Dr. Culicchia’s final report, dated May 30, 2007, indicated that Washington had reached his maximum medical improvement and did not need further treatment or diagnostic studies and | she could return to work without
 
 *15
 
 restrictions. FARA discontinued indemnity benefits effective May 31, 2007.
 

 Washington continued to treat with Dr. Pham and FARA continued to pay for medical benefits and medication. However, FARA continued to deny the epidural steroid injections and the surgery recommended by Dr. Pham and Dr. Mitchell. FARA also denied Dr. Pham’s request for a repeat cervical MRI.
 

 On June 18, 2007, Washington filed a disputed claim for compensation asserting that his wage benefits had been terminated in June 2007. He sought payment of total temporary disability and/or supplemental earnings benefits and he sought authorization for a medication recommended by Dr. Pham and not authorized by FARA. Washington further alleged that he was entitled to penalties and attorney’s fees, with interest, because the Shaw Group failed to timely pay indemnity benefits at a proper rate, failed to authorize and pay medical expenses, and failed to timely provide medical records after a written request.
 

 Prior to trial, the parties entered into stipulations. The parties agreed that based on the SMO report of Dr. Ioppola, the denial of the surgery for Washington was not arbitrary and capricious so no penalties were due for the failure to pay for such surgery. Further, the parties stipulated that Washington’s weekly compensation rate for the period of temporary total disability was $454.00. Trial was held June 12, 2009. On March 1, 2010, the workers’ compensation court issued an oral judgment and reasons for judgment which were dictated into the record. A written judgment was signed by the trial court that same day. The court found in favor of Washington and found that the repeat cervical MRI, cervical surgery and epidural steroid injections were reasonable and medically necessary and found Washington is entitled to have them performed. The court further found that Washington is entitled to receive temporary total disability benefits at the rate |r,of $454.00 per week beginning May 31, 2007 to the present and continuing until a change in circumstances. The court also found Washington is entitled to reimbursement of out-of-pocket medical expenses paid to CVS Pharmacy, all past medical expenses, and any other reasonable or medically necessary medical treatment related to his injury.
 

 Additionally, the court found Washington is entitled to attorney’s fees and penalties for a variety of reasons. The court awarded penalties of $2,000.00 for defendant’s termination of temporary total disability benefits. Defendant is also ordered to pay penalties of $350.00 for the late payment of indemnity benefits from January 12, 2007 until January 18, 2007, penalties of $2,000.00 for the non-reimbursement of out-of-pocket pharmacy expenses to CVS, penalties of $1,000.00 for not approving the repeat cervical MRI, $750.00 in penalties for defendant’s failure to pay his mileage timely, and $8,000.00 in attorneys’ fees. Defendant filed a motion for new trial which was denied April 21, 2010.
 

 Defendant filed this appeal asserting nine assignments of error. In the first three assignments of error, The Shaw Group asserts that the trial court erred in finding the cervical surgery, the repeat cervical MRI, and the epidural steroid injections are reasonable and medically necessary as a result of the accident. Next, The Shaw Group argues that the trial court erred in finding Washington is entitled to temporary total disability benefits beginning May 31, 2007 to present and continuing until there is a change in circumstances. The Shaw Group also argues the trial court erred in finding it is liable to reimburse Washington for out-of-pocket
 
 *16
 
 payments to CVS pharmacy on April 28, 2007. In assignments of error numbers six through nine, The Shaw Group argues Washington is not entitled to penalties and attorney’s fees for the termination of total temporary disability benefits, for failure to authorize the repeat cervical MRI, for failure to pay the outjof-pocket7 prescription costs to the pharmacy, is not entitled to attorney’s fees of $8,000.00.
 

 For the reasons which follow, we affirm the workers’ compensation court’s judgment.
 

 DISCUSSION
 

 The determination of whether an employee is entitled to workers’ compensation benefits is based on the facts and circumstances of each case, taking into consideration that the laws governing workers’ compensation must be construed liberally in favor of the employee.
 
 Alfortish v. Roughneck Construction, LLC,
 
 09-870 (La.App. 5 Cir. 5/11/10), 40 So.3d 1004. An appellate court cannot set aside the factual findings of the workers’ compensation judge unless those findings are clearly wrong, and the judge has committed manifest error.
 
 Id.
 
 Under the manifest error/clearly wrong standard, the appellate court may not merely decide if it would have found the facts of the case differently.
 
 Id.
 
 Rather, the appellate court must determine whether the trial court’s findings are reasonable, even if the appellate court feels that its own evaluation of the evidence is more reasonable.
 
 Id.
 

 The Shaw Group first argues that the trial court incorrectly found that Dr. Culicchia did not have Dr. Pham’s records and reports when performing the independent medical examination. The trial court found that Dr. Culicchia had not reviewed Dr. Pham’s records and thus, his opinion was flawed. The trial court used this information to determine whether or not to grant penalties and attorney’s fees for defendant’s termination of temporary total disability payments, as well as their denial of the claims for a repeat MRI and surgery.
 

 Dr. Culicchia did state in his initial report dated September 13, 2006, that he did not have the cervical MRI or lumbar MRI films to review, but he based his | ^conclusion on the available data and would review the missing MRI studies and render a further opinion. The attorneys for each party exchanged correspondence regarding providing Dr. Culicchia with the missing MRI films and obtaining a supplemental report.
 

 We find the trial court correctly found that Dr. Culicchia did not have a complete record from Dr. Pham when he rendered an independent medical report and, thus his opinion was flawed. The trial court correctly concluded that his report was flawed when determining penalties and attorney’s fees for the defendant’s failure to pay medical and indemnity benefits. The appropriateness of the penalties and attorney’s fees assessed by the trial court is discussed below.
 

 Cervical Surgery
 

 Defendant also asserts on appeal that the workers’ compensation court erred in holding that the cervical surgery for Washington is reasonable and medically necessary as a result of the accident. Defendant argues the first cervical MRI, the cervical myelogram and CT scans showed surgery was not warranted. Further, defendant argues the objective findings on exam and medical testimony presented at trial show the surgery was not warranted. Defendant relies on Dr. Cu-licchia’s findings and opinion and disregards the opinions of the other treating physicians.
 

 
 *17
 
 Dr. Pham, Washington’s treating physician, found Washington suffered a cervical disc herniation that did not improve over time with pain medication, therefore, he recommended surgical intervention and referred Washington to Dr. Mitchell. Dr. Mitchell, Washington’s choice of neurosurgeon, concurred and recommended cervical surgery. As discussed above, Dr. Culicc-hia did not have a complete record to review when he determined surgery was not warranted. Washington treated conservatively with Dr. Pham and Dr. Mitchell from January | fl2006 with no successful resolution of his pain. Both Dr. Pham and Dr. Mitchell recommended cervical surgery for his injury.
 

 For those reasons, we find the trial court was not manifestly erroneous in its determination that the cervical surgery was reasonable and medically necessary.
 

 Repeat Cervical MRI
 

 Defendant also argues the trial court erred in finding the repeat cervical MRI was reasonable and medically necessary as a result of the accident. Dr. Pham recommended the repeat cervical MRI because more than one year had passed since a cervical MRI had been performed and Washington’s symptoms were worse. Considering that Washington’s symptoms had not improved in over one year of conservative treatment and surgery was recommended, the MRI was necessary for an updated, thorough evaluation. Thus, we find the trial court was not manifestly erroneous in its determination that a repeat cervical MRI was reasonable and medically necessary.
 

 Epidural Steroid Injections
 

 Next, defendant contends the trial court erred in finding the epidural steroid injections were reasonable and medically necessary as a result of the accident. Dr. Pham began recommending epidural steroid injections in January 2006 to reduce Washington’s pain following the cervical MRI which showed a cervical disc herniation. Washington refused the epidural steroid injections at first due to a fear of needles. Dr. Pham continued to recommend the injections because Washington continued to complain of pain. Dr. Mitchell also recommended epidural steroid injections in May 2006 and August 2006.
 

 Both treating physicians have continuously recommended the epidural steroid injections during their treatment of Washington. Therefore, we find the |intrial court was not manifestly erroneous in its determination that the epidural steroid injections are reasonable and medically necessary.
 

 Temporary Total Disability Benefits
 

 Defendant argues the trial court erred in holding Washington is entitled to temporary total disability benefits of $454.00 per week beginning May 31, 2007 to present, and continuing until a change in circumstances is presented to the court. Until Dr. Culicchia’s report was furnished to the defendants, Washington was receiving these benefits. Defendant based the termination of these benefits solely on the opinion of Dr. Culicchia, the independent medical examiner.
 

 LSA-R.S. 23:1221 governs the payment of temporary total disability benefits and provides, in part:
 

 Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
 

 (1) Temporary total.
 

 [[Image here]]
 

 (c) For purposes of Subparagraph (l)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (l)(b) of this Paragraph, compensation for temporary total dis
 
 *18
 
 ability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
 

 (d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee’s physical condition has improved to the point that continued, regular treatment by a physician is not required.
 

 |nIn order to receive TTD benefits, the claimant must prove by clear and convincing evidence that he is unable to engage in any employment.
 
 Id.; Sarrio v. Stalling Construction Co.,
 
 04-34 (La.App. 5 Cir. 5/26/04), 876 So.2d 157.
 

 Both Dr. Pham and Dr. Mitchell, Washington’s treating physicians, have indicated Washington is unable to return to work due to his work related injury. Dr. Culicc-hia indicated in his supplemental report that Washington may return to work. However, as discussed above, the trial court correctly found Dr. Culicchia’s opinion was flawed. Thus, based on the reports and opinions of Washington’s treating physicians, we find he is unable to return to work and is, therefore, entitled to temporary total disability benefit payments from May 81, 2007, continuing until a change in circumstances.
 

 Reimbursement of Out-Of-Pocket Prescription Expenses
 

 Defendant also argues on appeal that the trial court erred in holding The Shaw Group liable for reimbursement of the out-of-pocket prescription expenses to Washington. Defendant argues FARA paid this claim directly to CVS. FARA did pay CVS for prescriptions over the course of treatment. However, Washington did pay out-of-pocket expenses for three prescriptions. We find Washington is entitled to reimbursement for those amounts he paid for the prescriptions related to the treatment of his work related injury. Therefore, the trial court was not manifestly erroneous in awarding Washington reimbursement for these out-of-pocket prescription expenses.
 

 Penalties and Attorney’s Fees
 

 Defendant contends the trial court erred in awarding penalties and attorney’s fees for its failure to pay for out-of-pocket prescription expenses, failure to approve and pay for a repeat cervical MRI, and for termination of temporary total disability benefits.
 

 11gLSA-R.S. 23:1201 provides the following:
 

 [[Image here]]
 

 F. Failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dol-
 

 
 *19
 
 [[Image here]]
 

 I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.
 

 [[Image here]]
 

 J. Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.
 

 The purpose of imposition of penalties and attorney’s fees is to discourage indifference and undesirable conduct by employers and insurers.
 
 Redler v. Giorlando’s Restaurant Corporation,
 
 07-658 (La.App. 5 Cir. 2/6/08), 979 So.2d 512. Awards of penalties and attorney’s fees in worker’s compensation cases are essentially penal in nature.
 
 Id.
 
 The crucial inquiry in determining whether to impose penalties and attorney’s fees on an employer is whether the employer had an articulate and objective reason to deny benefits at the time it took action.
 
 Id.
 
 The determination of whether an employer or insurer should be cast with penalties and attorney’s fees in a workers’ compensation action is essentially a question of 11sfact subject to the manifest error or clearly wrong standard of review.
 
 Id.
 
 The fact that an employer is subjectively motivated to avoid paying compensation is not determinative.
 
 Id.
 
 Neither is the fact that an employer loses a disputed claim.
 
 Id.
 
 The crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action.
 
 Id.
 
 Whether the employer’s act is arbitrary, capricious or without probable cause depends upon the facts existing and known to the employer at the time its decision as to benefits was made.
 
 Id.
 

 Penalties for Failure To Pay Out-of-Pocket Prescription Expenses
 

 Defendant argues the trial court erred in holding Washington is entitled to $2,000.00 in penalties for the failure to pay out-of-pocket prescription expenses. Defendant simply contends FARA paid the CVS charges in full. FARA did pay CVS for prescription charges, however, there were also prescription amounts paid out-of-pocket by Washington. On May 1, 2007, defense counsel sent correspondence to Washington’s counsel concerning these prescription expenses that had been submitted for payment on April 23, 2007. Additional information was requested, which was received from the pharmacy, but no payments were ever made by defendant to Washington.
 

 
 *20
 
 Thus, we find the trial court was not manifestly erroneous in finding Washington was entitled to penalties of $2,000.00 for defendant’s failure to reimburse Washington for these out-of-pocket prescription expenses.
 

 Penalties for Failure to Approve a Repeat Cervical MRI
 

 Defendant argues the trial court erred in awarding $1,000.00 in penalties for failure to approve and pay for a repeat cervical MRI. As discussed above, both Dr. Pham and Dr. Mitchell recommended a repeat cervical MRI and surgery. Defendant’s only basis for denial of the repeat cervical MRI was Dr. Culicchia’s 114findings, which the trial court found to be flawed and we agree. The repeat cervical MRI is necessary to evaluate Washington’s current condition and we have determined it to be reasonable and medically necessary and defendant had no legitimate basis or reason for denial of this procedure. Therefore, we find the trial court was not manifestly erroneous in awarding penalties of $1,000.00 in penalties for defendant’s failure to approve and pay for a repeat cervical MRI.
 

 Penalties for Termination of Total Temporary Disability Benefits
 

 Attorney’s Fees
 

 Defendant argues the trial court erred in holding that Washington is entitled to penalties and attorney’s fees of $2,000.00 for the termination of temporary total disability benefits. As discussed above, defendant terminated these benefits upon receipt of Dr. Culicchia’s supplemental report that indicated Washington was able to return to work. Defendant did not take into account the opinions of Washington’s treating physicians. Since we have agreed with the trial court that Dr. Culicc-hia’s report and opinion was flawed, we must also find that defendant’s reliance on his report for termination of benefits warrants penalties. Therefore, we find the trial court was not manifestly erroneous in awarding penalties of $2,000.00 for defendant’s termination of total temporary disability benefits.
 

 Attorney’s Fees
 

 Finally, defendants argue the trial court erred in awarding attorney’s fees of $8,000.00 to Washington for its termination of total temporary disability benefits, failure to approve the repeat cervical MRI, and failure to approve the epidural steroid injections.
 

 In accordance with LSA-R.S. 23:1201, the trial court may award a reasonable attorney’s fee for the prosecution and collection of such claims. Dr. Pham originally recommended epidural steroid injections and surgery in March 1152006. Dr. Mitchell recommended surgery in May 2006. Both procedures were denied by defendant. This workers’ compensation litigation has been extensive and lengthy and warrants such an attorney’s fee award. Therefore, we find the trial court was not manifestly erroneous in its award of $8,000.00 for attorney’s fees to Washington.
 

 In accordance with the above reasons, we affirm the workers’ compensation court’s judgment in this matter.
 

 AFFIRMED.