CLARENCE E. McMANUS, Judge.
lain this worker’s compensation matter the employer, Schindler Elevator Co. (hereinafter “Schindler”), appeals from a judgment finding it to be liable for supplemental earning benefits and medical expenses, and finding that it was arbitrary and capricious in its failure to pay same and therefore liable for penalties, attorney’s fees and costs. For the reasons that follow, we amend the judgment to award costs for this appeal, and as amended, affirm the judgment of the worker’s compensation court.
Claimant, Kyle Richert, was injured on January 29, 2009, while during the course and scope of his employment, when his knee was crushed between two large spools of chain. At the time of the accident, he was an apprentice for the elevator union. He would assist elevator mechanics in the performance of their duties. In performing his duties, he was required to lift heavy objects. The job required a lot of kneeling, bending and climbing. Balance was also an important element. On the day of the accident, he was unloading a flatbed truck carrying heavy spools of chain, each weighing 450 to 500 pounds. His leg got caught between a moving spool and a stationary spool. He stated that the moving spool hit him with sufficient velocity that it bent a knife that was in his pocket.
At the time of injury, he heard a loud pop, and felt pain. He sat on the sidelines while others finished unloading the truck.
He stated that he thought it[swas a sprain, and that he hoped the knee would get better on its own, so he spent the weekend resting. (The accident occurred on a Friday.) However, his knee became swollen and by Sunday, his whole leg was hurting. He went to work on Monday, but was unable to work. At that time, he filled out an accident report and was sent for medical attention.
Mr. Richert was sent to Concentra Medical Center for treatment, where he was treated by an internist and received physical therapy. After failing to show improvement, Concentra referred Mr. Ric-hert to Dr. Robert Steiner, an orthopedist. Mr. Richert first saw Dr. Steiner on March 11, 2009, and Dr. Steiner diagnosed a soft tissue injury and prescribed anti-inflammatories, pain medication and more physical therapy. Dr. Steiner’s review of the MRI showed no abnormalities. Mr. Richert was seen several more times, culminating in his last visit to Dr. Steiner in early June of 2009. At that time, Dr. Steiner released him to return to work with no restrictions. Mr. Richert testified that he told Dr. Steiner that he was still having pain and swelling in his knee and that Dr. Steiner told him at that point that is would take approximately nine months for his knee to “feel better.”
During the time from the date of his injury, Schindler placed Mr. Richert on light duty work in the office; however they continued to pay his full salary. After a few months Mr. Richert was moved to the warehouse, where he was placed on light to medium work, and where Schindler still continued to pay him his full salary. He continued at the warehouse until July of 2009 when he was laid off.
Thereafter Mr. Richert performed two temporary jobs for the elevator union, one for Travertine Elevator Interiors and one for American Crescent Elevator Company.
*490 The first was light work; however the second required the usual apprentice duties. He stated that his knee hurt the entire time he worked, and that he would take Ibuprofen while on the job and ice his knee to reduce swelling every 14night. The second job lasted two weeks and, at its end, he realized that he would not be able to return to being an apprentice at that time because of the pain and swelling to his knee. Mr. Richert testified that he did not return to Dr. Steiner because Steiner had told him that it would take time for his knee to totally heal.
Mr. Richert testified that he did not receive any more temporary jobs through the elevator union, so he filed for unemployment and began to look for work. During this time period, he was not performing heavy labor so his knee did not swell, however he still continued to feel pain and tenderness.
Because the knee had not healed as Dr. Steiner said it would, on May 21, 2010 Mr. Richert requested that he be allowed to see a physician of his choice. He consulted Dr. Charles Haddad, an orthopedic surgeon with the Pontchartrain Bone and Joint Clinic. Mr. Richert was examined by Dr. Haddad on May 31, 2010. Dr. Haddad requested a second MRI, and this one also showed no abnormality. However, by this time Mr. Richert had experienced one and one-half years of knee pain. Dr. Haddad concluded that claimant might have sustained an injury to a superficial nerve, such as saphenous nerve. Dr. Had-dad recommended an evaluation by Dr. Martinez, a pain management therapist, and also indicated the possibility of a nerve block. Finally, Dr. Haddad indicated that orthoscopic surgery might be necessary to determine whether there was scar tissue causing nerve damage. At this time Mr. Richert was not working, and Dr. Haddad was not asked to assign any work restrictions.
Schindler did not authorize treatment and instead sent Mr. Richert to Dr. Steiner for a second opinion. Dr. Steiner examined Mr. Richert on October 4, 2010, and concurred with Dr. Haddad, stating that he believed that there might be a neuroma and agreeing with Dr. Haddad’s recommendation that Mr. Richert be evaluated. Dr. Steiner further stated that “It is too soon to predict MMI [maximum [ fimedical improvement] or when he [Mr. Richert] could be discharged from a medical standpoint.”
On September 7, 2010, Mr. Richert filed his disputed claim for compensation. At this point, Schindler had not approved treatment with Dr. Haddad or Dr. Martinez.
In November of 2010, Mr. Richert obtained employment with Doggett Machinery as a warehouse man, making considerably less than he made as an elevator apprentice. He was able to perform the duties, with assistance from other warehouse personnel if heavy lifting was required.
Thereafter, Mr. Richert was seen by Dr. Haddad on April 13, 2011, at which time Dr. Haddad restricted him to light duty work. Dr. Haddad repeated his recommendation that Mr. Richert receive a diagnostic and therapeutic injection, or exploratory surgery of the nerve.
Mr. Richert filed a rule to show cause regarding the authorization of treatment with Dr. Martinez, and on May 24, 2011, the trial court rendered judgment finding that “the pain management ‘initial evaluation’ with Dr. Martinez, is reasonable and necessary and approved.” (Emphasis in original.)
Shortly before trial, on May 20, 2011 Schindler filed an exception of prescrip *491 tion. The hearing on the merits of Mr. Richert’s disputed claim for compensation was held on May 23, 2011. Via post-trail memorandums, the parties stipulated that claimant’s total, temporary disability rate would be $546.00 per week and that his SEB benefits while employed at Doggett Machinery would be $226.14 per week.
After the hearing on the merits, the worker’s compensation court rendered judgment on August 10, 2011, finding that the disputed claim for compensation was not prescribed. The court ruled that Mr. Richert was entitled to supplemental | earning benefits from January 29, 2009 through July 25, 2009, and from July 25, 2010 to November 7, 2010 in the amount of $546.00 per week, subject to a credit for any overpayment as a result of being paid full wages in lieu of compensation during the time period of January 29, 2009 through July 25, 2009. The court found that Mr. Richert was not entitled to supplemental earning benefits from July 26, 2009 to July 24, 2010 when he was receiving unemployment benefits. The court also found that Mr. Richert was entitled to supplemental earning benefits from November 8, 2010 through the present and continuing in the amount of $226.14 per week and that Mr. Richert was entitled to medical expenses, medication expenses and transportation expense. Finally, the worker’s compensation court found that the employer did not reasonably controvert claimant’s entitlement to supplemental earning benefits, medicals and diagnostic tests, and he assessed penalties of $8,000.00 and attorney’s fees of $8,000.00.
Defendant, Schindler Elevator Company appeals from the worker’s compensation court’s ruling, alleging that the court erred in awarding supplemental earning benefits for time periods prior to April 13, 2010 (the date the Dr. Haddad restricted Mr. Richert to light duty work), and alleging that the trial court erred in awarding penalties and attorney’s fees. Schindler does not challenge the court’s ruling that the claim is not prescribed. Mr. Richert answered the appeal, seeking an increase in attorney fees for defense of the appeal.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of review. Clay v. Our Lady of Lourdes Regional Medical Center, Inc., 11-1797 (La.5/8/12), 93 So.3d 536.
It is well-settled in our jurisprudence that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Ardoin v. Firestone Polymers, L.L.C., 10-0245 at p. 6 (La.1/19/11), 56 So.3d 215, 219. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s | conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. However, where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’ story, the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. Id. at 882; Rosell v. ESCO, 549 So.2d 840 (La.1989).
Zito v. Advanced Emergency Medical Services, Inc., 11-2382 (La.5/8/12), 89 So.3d 372.
*492 In its first allegation of error, employer contends that the worker’s compensation judge was manifestly erroneous in finding claimant was entitled to SEBs from June 3, 2009 through July 25, 2009, as well as from July 10, 2010 through November 7, 2010 and November 8, 2010 through to April 13, 2011. Schindler alleges that, since Dr. Haddad did not restrict claimant to light duty until April 13, 2011, he failed to meet his burden of proof that he had any type of disability whatsoever during those time periods.
An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). “The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.” Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793 (La.1/9/11), 56 So.3d 170, 174, citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556.
Initially, the employee bears the burden of proving, by a preponderance of the evidence, that his injury resulted in his inability to earn that amount under the facts and circumstances of his individual case. Poissenot, supra at 174. Once the employee meets his burden of proof, the burden then shifts to the employer to IsProve by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was either offered to the employee or was available to the employee in his or the employer’s community or reasonable geographic area. LSA-R.S. 23:1221(3)(c)(I); Poissenot, supra at 174.
In this case, Schindler does not argue that Mr. Richert is not injured, or that he is not currently entitled to SEB payments. Instead, Schindler contends that Mr. Ric-hert did not meet his burden of proving that he was not able to earn 90% of his pre-injury wages from the time of the accident until the time he was restricted to light duty work by Dr. Haddad.
Mr. Richert testified that from the time of the injury until the date of trial, he was physically unable to perform his pre-injury employment. Immediately after the accident, Mr. Richert was placed on light duty employment, while making his former wage in lieu of worker’s compensation benefits. He has not returned to his former employment, with the exception of a two week attempt which showed him that he was unable to continue in that employment, since the accident. There has been no evidence to suggest that Mr. Richert could and did return to his pre-injury employment, and then became re-injured or had some other event so as to disqualify him from SEB benefits until his April 13, 2011 visit to Dr. Haddad. In addition, Mr. Richert testified that, after Schindler laid him off and he was unable to obtain work through the Elevator’s Union, he continued to unsuccessfully look for employment while collecting unemployment benefits, and that he eventually found a job paying less than 90% of his pre-injury wages. Mr. Richert proved, by a preponderance of the evidence, that he was unable to earn 90% of his average pre-injury. The burden then shifted to Schindler to show that Mr. Richert could perform the duties of an elevator apprentice, and that the job was offered or was available. Schindler presented no evidence to meet its burden of proof. Thus, the |3worker’s compensation court did not commit manifest error in determining that plaintiff was entitled to supplemental earning benefits. This allegation of error is without merit.
In his second allegation, the employer alleges that the trial court erred in *493 awarding penalties and attorney’s fees for failure to pay SEBs during the time periods listed.
LSA-R.S. 23:1201 provides in pertinent part:
F. Failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.
[[Image here]]
I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.
[[Image here]]
J. Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.
In Washington v. Shaw Group, 10-568 (La.App. 5 Cir. 5/10/11), 68 So.3d 10, 12-13, writ denied, 11-1211 (La.9/23/11), 69 So.3d 1159, this court said
The purpose of imposition of penalties and attorney’s fees is to discourage indifference and undesirable conduct by employers and insurers. Redler v. | inGiorlando’s Restaurant Corporation, 07-658 (La.App. 5 Cir. 2/6/08), 979 So.2d 512. Awards of penalties and attorney’s fees in worker’s compensation cases are essentially penal in nature. Id. The crucial inquiry in determining whether to impose penalties and attorney’s fees on an employer is whether the employer had an articulate and objective reason to deny benefits at the time it took action. Id. The determination of whether an employer or insurer should be cast with penalties and attorney’s fees in a workers’ compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review. Id. The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Id. Neither is the fact that an employer loses a disputed claim. Id. The crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action. Id. Whether the employer’s act is arbitrary, capricious or without probable cause depends upon the facts existing and known to the employer at the time its decision as to benefits was made. Id.
*494 In this case, Schindler failed to pay any indemnity benefits. Instead, it first assigned him to work at a job normally commanding a lesser pay grade while continuing to pay his salary, and then it laid Mr. Richert off, citing lack of work. Approximately one year later, when Mr. Ric-hert sought treatment with the physician of his choice, Schindler did not pay for treatment and instead referred him for a second opinion. Even after Schindler’s physician concurred in the need for additional testing and treatment, Schindler did not authorize same, instead requiring Mr. Richert to file a rule to order the authorization of additional testing. In addition, throughout this time period, Schindler failed to pay SEB benefits, although Mr. Richert was not employed from July 10, 2010 through November 10, 2010, and was employed but not able to earning 90% of his pre-employment wages from November 10, 2010 through the date of trial. Schindler does not explain its failure to authorize the medical expenses for pain management testing recommended by both Dr. Haddad and by Dr. Steiner on reevaluation, as well as any continued treatment by Dr. Haddad to determine the necessity for surgery and/or other medical treatment, which it certainly knew about as early as May 2010, and certainly by June 2010 when Dr. Steiner concurred with Dr. Had-dad’s Infindings. Schindler also does not present any evidence to show why it failed to pay SEB benefits from July 10, 2010 until the date of trial, and failed to engage in any steps to provide vocational training or job location. It finally does not explain why, after Mr. Richert himself secured a job at less than 90% of his pre-injury wages, it failed to pay SEB benefits. Instead, Schindler argues that it was entitled to rely on Dr. Steiner’s original report, even after Dr. Steiner himself agreed with the findings of Dr. Haddad. Under these circumstances, we cannot find that the worker’s compensation court was manifestly erroneous in assessing penalties of $8,000.00 and attorney’s fees of $8,000.00. We find this allegation of error to be without merit.
Mr. Richert has filed an answer and seeks additional attorney fees incurred as a result of this appeal. “An increase in attorney’s fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiffs attorney, provided that the plaintiff requests such an increase.” Russell v. H & H Metal Contractors, Inc., 11-27 (La.App. 3 Cir. 6/1/11), 65 So.3d 806, 819. A review of the record indicates that the claimant’s counsel requested such attorney fees and filed a brief in support of the workers’ compensation ruling. Therefore, we amended the judgment of the worker’s compensation court to award an additional $1,500.00 in attorney fees for this appeal.
For the above discussed reasons, the judgment of the worker’s compensation court is amended in part to award an additional $1,500.00 for costs of this appeal, and as amended, is affirmed. All costs are assessed against appellants.

AMENDED IN PART AND AS AMENDED, AFFIRMED