984 So.2d 887 (2008)
Michael LACHNEY
v.
FERTITTA EXCAVATING CONTRACTOR INC.
No. 07-CA-885.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*888 Wade A. Langlois, III, Gaudry, Ranson, Higgins & Gremillion, L.L.C., Gretna, Louisiana, for Defendant/Appellant.
Richard M. Millet, Attorney at Law, LaPlace, Louisiana, for Plaintiff/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
In this workers' compensation matter, the defendant/appellant, employer Fertitta Excavating Contractors, Inc., ("Fertitta"), appeals a decision awarding benefits to claimant, Michael Lachney, and assessing penalties and attorney's fees to Fertitta. For reasons that follow, we affirm.
Claimant, Michael Lachney ("Mr. Lachney"), asserts that he injured his cervical, thoracic, and lumbar spine when the brakes failed on the dump truck he was driving in the course and scope of his employment with defendant, Fertitta. The accident occurred on February 3, 2003. On March 17, 2004, Mr. Lachney filed a disputed claim for compensation in which he alleged Fertitta refused to provide necessary care and failed to pay medical benefits. Initially, the major medical concern involved the refusal by Fertitta to provide a lumbar interbody fusion, recommended by his physician, and related medical conditions and expenses.
Fertitta filed an answer denying that the injury was work related, that Mr. Lachney has a disability which prohibits his ability to work, and also denying that it acted in an arbitrary and capricious manner in the denial of benefits.
Subsequently, Mr. Lachney amended his claim twice to assert further incidents of arbitrary and capricious refusal to pay medical benefits, including surgery, as well as a termination of workers' compensation benefits on March 22, 2005.
Fertitta moved for an independent medical examination. After a hearing on that issue, the Workers' Compensation Court rendered a judgment ordering several diagnostic tests and deferring a ruling on the motion for an independent medical examination until the test results were reviewed by the court. Fertitta filed an application for writs of review of that ruling with this Court and the Louisiana Supreme Court. When both Courts upheld the trial court judgment, the medical tests ordered were conducted.
Upon completion of the medical testing, Fertitta again filed a motion for an independent medical examination. The Workers' Compensation Court granted that motion and appointed Dr. Roger Smith for that purpose. When the independent medical examination was completed, the matter went to a trial on the merits resulting in the judgment at issue in this appeal.
*889 After the trial, the Workers' Compensation Court rendered a judgment in favor of claimant in which it found that Mr. Lachney suffered a compensable injury and was entitled to temporary total disability benefits, medical expenses, medication expenses, transportation expenses, vocational rehabilitation, and re-training. The court further found a causal connection between the accident and claimant's thoracic, neck, back, shoulder, and psychological problems sustained by claimant. Additionally, the court approved the cervical decompression surgery as recommended by his treating physician, after a finding that the surgery was reasonable and necessary.
The judgment assessed multiple penalties and attorney's fees against Fertitta after a finding that failure to pay medical expenses caused deterioration in claimant's condition. The Workers' Compensation Court also based the assessment of penalties on the finding that Fertitta failed to reasonably controvert the entitlement to benefits and that it was arbitrary and capricious in the failure to pay indemnity benefits, to authorize medical care, numerous diagnostic tests, and necessary surgery.
Fertitta has appealed the judgment. Mr. Lachney has filed an answer to the appeal seeking additional attorney's fees for work done in this appeal.
FACTS
At trial, the parties stipulated that the accident occurred while Mr. Lachney was in the course and scope of his employment and that Fertitta paid compensation in the amount of $354.35 from the date of the injury through March 21, 2005. Further, joint stipulations to the authenticity and admissibility of certain documents, including medical records and depositions, were made.
The parties made it clear to the court that it was only the causation and the nature and extent of claimant's injuries that remained at issue. From pleadings filed prior to trial, it is clear that Fertitta specifically disputes any causal connection between the accident and claims related to claimant's neck injuries.
Mr. Lachney testified at trial that he is unable to read or write and depends on his wife of thirty years to complete medical and claim forms. Mr. Lachney was employed with Fertitta as a truck driver for about one year before the accident. He stated that he has always been healthy prior to the accident at issue herein and had no trouble with his back, legs, or neck.
On the day of the accident, Mr. Lachney was driving a tri-axle dump truck on River Road. He was unable to apply the brakes and was forced to drive onto a levee to avoid an oncoming school bus. When Mr. Lachney returned to Fertitta's yard, he told his supervisor that he refused to drive the truck because the brakes were not working properly. His supervisor told him that the truck was new but agreed to have it checked. The next time Mr. Lachney drove the truck, the brakes failed again, and he was unable to stop. He "threw the truck in gear and turned off the key" in an unsuccessful attempt to stop the vehicle. He struck the dump truck in front of him. The seat belt broke, and Mr. Lachney was tossed around, hitting his head. He recalls seeing the crushed front end of his truck. The motor was pushed inside the cab, and the hood was pushed over the roof.
At the time of the accident, Mr. Lachney refused to go to the hospital in the ambulance that arrived on the scene. In retrospect, he doesn't recall much and assumes he was dazed and in shock. It was not until he arrived at home that he was aware of considerable pain. He called Fertitta, who arranged for him to see Dr. William *890 Johnson ("Dr. Johnson") a few weeks later. Mr. Lachney explained that he had no medical insurance, so he waited for Fertitta to arrange the doctor's visit.
Dr. Johnson's records are contained in the record. They show that Dr. Johnson first saw Mr. Lachney on February 24, 2003. At that time, Mr. Lachney complained of shoulder, upper middle back traveling pain, and headaches. He was suffering from constant pain between his shoulder blades, headaches, dizziness, and numbness and burning sensation in his feet. Mr. Lachney's main complaint was sharp pains between the shoulder blades. Dr. Johnson prescribed physical therapy for Mr. Lachney.
Physical therapy was approved and began on February 26, 2003. After six weeks of therapy, the therapist report notes some reduction in pain but states that "Mr. Lachney continues to present with poor upper thoracic muscle strength which results in an early onset of fatigue and muscle spasms when sitting." When lifting exercises were added to his therapy, his pain worsened, with his lower spinal area reported as the most painful. An MRI of the lower dorsal spine was performed on April 8, 2003 and revealed a subtle bulging of the T8-T9 intervertebral disc. Dr. Johnson ordered an EMG and a nerve conduction study to complete the workup to determine if the abnormality seen on the MRI was producing significant nerve root or spinal cord infringement. That order was refused. However, a subsequently ordered stand-up MRI was approved and conducted on June 17, 2003. After receiving the results of that test, Dr. Johnson recommended light duty, no truck driving, and continued therapy for one month.
Subsequently, Mr. Lachney was referred to Dr. Stefan Pribil ("Dr. Pribil"). Mr. Lachney first consulted Dr. Pribil on July 16, 2003. At that time, Mr. Lachney complained of pain between the shoulder blades, although he denied having pain in his neck. Initially, Dr. Pribil recommended a lumbar interbody fusion at the L5-S1 level based on Mr. Lachney's complaints of pain and the MRI of the lumbar spine. However, Dr. Pribil stated in his deposition that Mr. Lachney required a CAT scan to complete the workup before surgery. Dr. Pribil also stated that an EMG was appropriate for Mr. Lachney. Neither of the requested diagnostic tests was approved. Dr. Pribil stated that his assistant called "incessantly" and never received either approval or a written denial. The denial of treatment came with an opinion of Dr. Anthony Ioppolo, the insurance medical examiner.
At that point, Dr. Pribil was forced to discharge Mr. Lachney. Dr. Pribil referred Mr. Lachney to Dr. Morteza Shamsnia ("Dr. Shamsnia"), a board certified neurologist, in hopes that Dr. Shamsnia could get approval for the tests.
Dr. Shamsnia first saw Mr. Lachney on September 13, 2004. At that time, Mr. Lachney complained of headaches and dizziness, as well as neck, mid-back, and shoulder pains. He also complained of left-arm numbness and tingling. Mr. Lachney had low back pain since the accident and numbness and burning sensation in both feet. He was in good health until the accident. Besides the complaints related to the accident, Mr. Lachney had Bell's palsy in January of 2004.
Dr. Shamsnia reviewed the MRIs and concluded that Mr. Lachney had a disc herniation at L3-L4 and degenerative changes at L5-S1. The MRI of the cervical spine showed a disc herniation at C6-C7. Dr. Shamsnia recommended an MRI of the head because of the trauma of the accident and also an EMG. Dr. Shamsnia also recommended *891 an EEG for the evaluation of his headaches, dizziness, and forgetfulness.
None of the tests were conducted, however, because approval was denied on October 1, 2004. The adjuster, Ms. Regina Patterson ("Ms. Patterson"), informed Dr. Shamsnia's office that she would "get back to them in a week." However, numerous phone calls to Ms. Patterson were not returned.
On a visit to Dr. Shamsnia's office on December 20, 2004, Mr. Lachney continued to complain of pain in his back and burning and numbness in his legs. Dr. Shamsnia continued his efforts to get approval for diagnostic tests to no avail. Mr. Lachney returned to Dr. Shamsnia on March 28, 2005. At that point, he complained of headaches, low back pain, pain going down his legs, and neck pain. He still had the disc herniations, and his diagnostic testing was still pending the approval of the insurance company. Dr. Shamsnia had prescribed several medications including Lexapro, Lidoderm Patch, Lortab and Soma. Mr. Lachney still was unable to return to work as a truck driver because of the pain. Dr. Shamsnia advised the patient to stay off work until the diagnostic tests could be completed and he could return to treatment with Dr. Pribil. That was the last time Dr. Shamsnia saw Mr. Lachney because shortly afterward Fertitta terminated all benefits.
Dr. Shamsnia stated that Mr. Lachney's injuries and pain were caused by the accident in question. However, Dr. Shamsnia could not treat Mr. Lachney any further without the necessary diagnostic tests.
Fertitta terminated Mr. Lachney's workers' compensation benefits in March of 2005. As previously stated, Mr. Lachney filed a second petition to amend his claim to request that his benefits be reinstated. In response, Fertitta filed a motion for appointment of independent medical neurosurgeon because "there is a dispute as to the condition of the claimant and the necessity for further treatment and/or surgery." Ultimately, the tests were conducted, and Dr. Roger Smith ("Dr. Smith") was appointed as the independent examiner.
Dr. Smith's report is contained in the record. In that report, Dr. Smith stated the Mr. Lachney related that he was injured in his truck when the brakes failed. He had upper and lower back pain and pain between his shoulder blades. Mr. Lachney also complained of headaches and dizziness, numbness and a burning sensation in his feet. When Mr. Lachney was evaluated by Dr. Smith in October of 2006, he was experiencing cervical pain, difficulty moving his neck, numbness and tingling in his arms, low back pain, weakness, and numbness in his legs. Mr. Lachney also complained of urinary hesitancy and erectile dysfunction. A physical examination showed tenderness in the cervical spine and limited range of motion of the neck. Further, Mr. Lachney had tenderness in the lumbar spine and very limited motion in the lower back. The final impressions made by Dr. Smith were that Mr. Lachney had chronic lumbar and cervical sprain, cervical spondylosis and disc herniation at C3-4, mild cervical spondylosis at C4-5 and C6-7, and degenerative disc disease at L4-5. Dr. Smith recommended that a discectomy and fusion should be considered to resolve the spinal cord compression at C3-4. Dr. Smith did not recommend surgery in the lumbar region. He did state that it is unlikely that Mr. Lachney would be able to return to work as a truck driver regardless of whether he had surgery and recommended a functional capacity evaluation to assess a disability rating.
*892 Mr. Lachney testified about his frustration and depression over the inability to get the tests and treatment necessary for him to return to his job as a truck driver. At one point when his doctor's request was denied, Mr. Lachney became so upset he had to be rushed to the emergency room. He was diagnosed with high blood pressure and Bell's palsy.
Mr. Lachney testified that he has not been able to work since the accident and is in constant pain. He suffers a burning sensation in his legs. Further, he has pain in his shoulder that starts at his neck and goes down his left arm. Initially, the neck pain was on both sides but, at this point, the left seems to be worse.
Mr. Lachney also stated that he has never had a functional capacity evaluation or a vocational rehabilitation evaluation. Further, his benefits have been terminated since March 21, 2005 and none of his doctors have cleared him to return to work. Mr. Lachney did renew his commercial driver's license because it would be cost prohibitive to allow it to lapse and try again to get a new one. Further, it is necessary for his livelihood. Mr. Lachney explained that, although he is still unable to work, he hopes to return to his profession as soon as possible. He is confident that with the appropriate neck surgery that hope will be realized.
Katherine Lachney, claimant's wife, testified that her husband could not read or write and that she supplied the information on various medical forms and the claim form. She also corroborated his testimony about the suffering he has undergone since the accident.
LAW
In brief to this Court, Fertitta assigns four errors for our review. The first three relate to the finding of a causal connection between the accident and claimant's neck injury and the resulting order for surgery and other treatment. The final assignment challenges the Workers' Compensation Court's finding that Fertitta was arbitrary and capricious in denying claimant's claim. This assignment is also based on the causal connection between the accident in question and the neck injury.
To be entitled to workers' compensation benefits, the claimant must prove that there was a work-related accident, resulting in a disability that was caused by the accident.[1] The claimant bears the burden of establishing this causal connection by a reasonable preponderance of the evidence.[2] On appeal, the factual findings of a trial court are not disturbed unless manifestly erroneous. We are aware that the testimony of medical experts was done by deposition.[3] However, the Louisiana Supreme Court has, nevertheless, ruled that the manifest error standard of review is applicable even to deposition testimony.[4]
Given the medical testimony and records offered in this matter, we cannot find error in the trial court's finding that the neck injury was casually related to the accident. It is clear from all of the testimony that Mr. Lachney's complaints of pain were consistent and began with the accident. Fertitta's assertion that Mr. Lachney did not complain specifically of neck pain at first is unconvincing. Mr. *893 Lachney complained from the first examination about pain between the shoulders and his back. Further, at the time of the accident, Mr. Lachney was a healthy man in his mid-forties with no history of prior back or neck pain. Accordingly, we find no manifest error in the finding of a causal connection between the accident and the necessity for surgery to relieve the cervical compression.
Fertitta also argues that the trial court erred in assessing penalties and attorney's fees for its failure to approve the cervical surgery.
LSA-R.S. 23:1201 provides that penalties and attorney's fees can be assessed against an employer or insurance company for failure to pay benefits pursuant to the Workers' Compensation Law. However, such penalties shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.[5] The trial court's award was based on a finding of fact that such an award was warranted and that decision cannot be overturned absent a finding that it is clearly wrong.[6]
This Court has recently explained the purpose and considerations in imposing penalties and attorney's fees:
The purpose of imposition of penalties and attorney's fees is to discourage indifference and undesirable conduct by employers and insurers. Awards of penalties and attorney's fees in workers' compensation cases are essentially penal in nature. The crucial inquiry in determining whether to impose penalties and attorney's fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action. The determination of whether an employer or insurer should be cast with penalties and attorney's fees in a workers' compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review. The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. The employer must adequately investigate the claim. The crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action. Whether the employer's act is arbitrary, capricious or without probable cause depends upon the facts existing and known to the employer at the time its decision as to benefits was made.[7]
(Footnotes and citations omitted).
We find the award of penalties is supported by several acts of Fertitta that go well beyond the refusal to approve the surgery. One such incidence is Fertitta's failure to pay for diagnostic tests, until ordered to do so by the Workers' Compensation Court, this Court, and the Louisiana Supreme Court. There was no reasonable argument presented by Fertitta for its refusal of diagnostic tests, vocational evaluations, or retraining. Further, the only reason for refusal to pay medical benefits and for termination of benefits was the statement by the insurance medical examiner that Mr. Lachney did not complain of neck pain.
The judgment of the trial court ordered that "multiple penalties are assessed, for all violations." In the record before us, we *894 find several reasons upon which the trial court could base its finding of arbitrary and capricious actions sufficient to support the award. Accordingly, we find the imposition of multiple penalties for the conduct of the defendant in this matter is justified and without manifest error.
For the foregoing reasons, we affirm the judgment of the trial court.
Mr. Lachney has answered this appeal seeking an award of attorney's fees for work done in this appeal. A workers' compensation claimant who timely answers the appeal is entitled to increased attorney's fees and penalties to reflect additional time incurred in defending against an employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim.[8] Accordingly, we award $2,500 in attorney's fees to counsel for Michael Lachney.
AFFIRMED.
NOTES
[1] Wiley v. Dijon Serv., Inc., 02-242 (La.App. 5 Cir.10/16/02), 831 So.2d 317, 318, writ denied, 02-2612 (La.12/13/02), 831 So.2d 990.
[2] Id.; Quinones v. U.S. Fid. and Guar. Co., 93-1648 (La.1/14/94), 630 So.2d 1303, 1306-07.
[3] Fiffie v. Borden, Inc., 618 So.2d 1199 (La. App. 5 Cir. 1993), writ denied, 624 So.2d 1235 (La. 1993).
[4] Virgil v. Am. Guarantee and Liab. Ins. Co., 507 So.2d 825 (La. 1987) (remanded on other grounds).
[5] LSA-R.S. 23:1201 F(2).
[6] Wooley v. E.J.D. Builders, Inc., 94-955 (La. App. 5 Cir. 1/30/96), 668 So.2d 1221, writ denied, 96-0506 (La.4/8/96), 671 So.2d 338.
[7] Redler v. Giorlando's Rest. Corp., 07-658 (La.App. 5 Cir. 2/6/08), 979 So.2d 512.
[8] Hamilton v. Compass Group USA/Morrison, 07-501 (La.App. 5 Cir. 11/27/07), 973 So.2d 803.