SUSAN M. CHEHARDY, Chief Judge.
| ¿This is a workers’ compensation case in which the employer appeals a judgment in favor of the claimant that awarded disability benefits, medical expenses, and penalties and attorney’s fees. We affirm.
FACTS
On May 13, 2011, Pedro Salazar filed a Disputed Claim for Compensation against Command Construction, LLC. Salazar, a laborer classified as a carpenter, alleged that on March 23, 2011, he was injured on the job while lifting several heavy metal forms. He claimed injury in his shoulder/back area.
The employer contested the claim.[1] It denied that the claimant had an accident in the course and scope of employment, denied that he had any present work-related disability, and denied that he had rights to any benefits whatsoever.
The case came to trial before an Office of Workers’ Compensation judge on April 16, 2012. The parties stipulated that the claimant was an employee of Command Construction on the date of the alleged accident, his average weekly wage was $453.38, and his workers’ compensation rate was $302.27. The parties also stipulated to the authenticity and admissibility of the underlying claim [{¡documentation, entered as joint exhibits, which included the forms submitted to the Office of Workers’ Compensation, medical records and medical bills, depositions or parts of depositions of two witnesses, and various other documents. Among them was correspondence from the workers’ compensation insurer dated April 5, 2011, informing the claimant, “We have completed our investigation ... and find that you have not sustained a compensable work related claim. Therefore, ... we must respectfully deny your claim.”
Trial Testimony
The claimant testified he injured his back while working for Command Construction at the Earhart Boulevard Job Site in New Orleans on the afternoon of *123 March 23, 2011. He said he sustained the injury while lifting a heavy cement form. His brother, Raul Salazar, who also was an employee of Command Construction and was working near the claimant, did not see the accident, but confirmed that his brother was in pain at the end of the day. Bryan Monte, the crew supervisor, testified that his crew, including both the claimant and Raul Salazar, was working wrecking forms on the afternoon of March 23, 2011, which involved lifting forms that weighed up to 250 pounds and required three to four men to lift.
The claimant testified he completed the workday, but was unable to report the accident that day because Monte, his supervisor, was not in the area where he was working. Further, he did not know the extent of his injury when he left work. Both the claimant and Raul Salazar testified that the claimant attempted to reach Monte by phone that evening, but that he was unsuccessful.
Both the claimant and Raul Salazar testified that the claimant was not having any problem with his back prior to the accident and that he was now having backhand left shoulder problems because of the accident. They testified that the claimant was in a lot of pain on the evening of the accident, March 23, 2011. The claimant intended to tell his supervisor, Monte, on the following morning, March 24, 2011. When he arrived at the jobsite on the morning of March 24, 2011, however, he was met at his truck by Monte. Before he could tell him about the accident, Monte handed him a Personnel Action Form, which he wanted him to sign, involving an incident that occurred the day before at work between the claimant and another supervisor, Patrick Jackson. The claimant testified he did not sign the form because there was no place on the form for him to sign.
The claimant subsequently told Bryan Monte about his accident. Monte wrote an accident report and told the claimant he could go to the company doctor, but the claimant preferred to go to his family doctor.
The claimant was driven home that day by his brother, Raul Salazar. He went immediately to his family doctor, Dr. Michael Davis, on March 24, 2011, and told him of his low-back pain and left shoulder pain as a result of lifting at work the day before. The doctor told him to stay out of work from March 24, 2011 through March 29, 2011. The claimant reported this to the company.
Although he continued to feel pain, the claimant contacted the construction foreman, Byron Dupre, on March 29, 2011, because he was scheduled to return to work on March 30, 2011. He was told that he needed a full release form from the doctor.
When the claimant returned to his family doctor on April 1, 2011, Dr. Davis refused to release him because of his continuing left shoulder and low back pain. Dr. Davis informed Pedro Salazar that his clinic did not deal with workers’ compensation and referred him to the Industrial Medical Clinic. When he | .^contacted his employer about his medical treatment, he was told that he needed to meet with the company about the claim.
He subsequently complied with the company’s request by meeting with an adjuster with Gray Insurance Company, while he was unrepresented. His claim was ultimately denied by Gray Insurance Company in a letter dated April 5, 2011.
After seeking counsel, the claimant saw Dr. F. Allen Johnston, an orthopedic surgeon, on April 20, 2011. He was taken out of work indefinitely and placed on medication. He had follow-up visits on June 1, *124 July 13, and August 24, 2011. Dr. Johnston ordered him to refrain from working. Physical therapy was prescribed for the claimant’s lower back and shoulder, but it was not authorized.
On September 6, 2011, the claimant sought therapy and treatment with Louisiana Rehabilitation and Spine Institute, LLC, and Dr. Ward Sudderth. The claimant has continued to receive therapy and treatment. He has been deemed temporarily totally disabled and not fit for duty by his doctors. The medical records are uncontroverted. The claimant has not worked since the day of the accident, March 23, 2011.
The employer contested that any accident occurred, relying on testimony of other witnesses that contradicted the claimant’s. The employer sought to establish numerous circumstances that discredited or cast doubt on the claimant’s version of events. The employer asserted the claimant did not report the accident on the day of the alleged accident; instead, the claimant showed up for work the day following the supposed accident dressed and ready to work. It was only after the claimant was told he was being reprimanded for an argument with a supervisor the day before and sent home that he first reported an accident. None of the potential witnesses identified by the claimant himself as being in the vicinity of the alleged |fiaccident saw or recalled any accident. The claimant called the jobsite foreman, Byron Dupre, days after the accident, indicating that he wanted to return to work.
Further, the claimant’s brother, who testified on behalf of the claimant, did not see the accident, but heard about it from the claimant. Counsel for the employer elicited testimony from Raul Salazar that he had been paying the living expenses of the claimant ■ because the claimant had not worked since March 23, 2011.
Ruling of the Court
In written Reasons for Judgment, the judge found as follows, in pertinent part:
Although there was contradictory testimony concerning the occurrence of the accident, the occurrence was corroborated by the medical report of Dr. Michael Davis, which stated, “Pain in back after lifting at work at the end of day no acute injury reported.” Dr. Davis’ report was dated March 24, 2011, the day after the accident, and it confirmed that the claimant was disabled by the injury. In addition, Dr. Allen Johnston’s report dated April 20, 2011, corroborates the occurrence of the accident and injuries on March 23, 2011, and also that the claimant was disabled by the injury. Further, Dr. Ward Sudderth’s report dated March 14, 2012 confirms that injuries were connected to the job accident of March 23, 2011, that the claimant is still under treatment, and that the claimant is disabled.[2] The claimant was working before the accident, but has been unable to return to work since the accident.
Noting there was conflicting testimony, conjecture and speculation concerning whether the accident occurred, the judge found that the claimant gave | consistent testimony concerning the occurrence of the accident to the doctors and his employer. The claimant reported the injury to his supervisor, Bryan Monte, the day after the accident. The accident was corroborated by Raul Salazar, the claimant’s brother. The claimant’s co-workers testified they did not recall the accident. The court *125 discussed the conflicts in the testimony as follows:
Testimony was elicited from vai’ious witnesses. The witnesses gave conflicting testimony concerning the occurrence of the accident. Some of the co-workers stated that they did not recall [an] accident. There was conjecture and speculation concerning whether the accident occurred. This court had to apply the evidence and law to the facts which were pertinent to this case.
The court had to make credibility determinations of the witnesses. There were variations in the witnesses “demeanor and voice tones”. The court as fact finder had to determine the credibility of such witness, and the weight which would be given to each witnesses testimony. There was a “parade of witnesses” by the employer “denying or not recalling” the accident.
The claimant has met the requisite burden of proof for the work related accident by:
(1) His testimony and witnesses testimony
(2) Corroboration by Raul Salazar of his injury and disability
(3) The totality of the medical records of all doctors introduced into evidence corroborating accident, injury, and disability.
(4) All other evidence, witnesses, and laws.
The claimant went to the doctor the next day after the accident. He gave consistent testimony to the doctors. His testimony is corroborated by the circumstances following the accident. No other evidence discredits his entitlement to benefits. The differences in circumstance concerning the accident were resolved in the claimant’s favor by the testimony and evidence presented.
In conclusion, the court stated,
The claimant herein has met the requisite burden of proof to establish that the accident occurred during the course and scope of his employment. Additionally, he has [ ¡¡proven a causal connexity between the accident and his disability.
Having considered the testimony, evidence, and law, the court rules that judgment is rendered in favor of the claimant and against the defendants. The evidence confirmed that the claimant was injured by accident during the course and scope of his employment with Command Construction Industries, LLC on March 23, 2011. The claimant is entitled to receive medical expenses, medication expenses, indemnity, travel expenses, penalties, attorney’s fees, and any other applicable workers’ compensation benefits.
In the judgment rendered on June 1, 2012, the workers’ compensation judge ruled that Pedro Salazar was injured by an accident in the course and scope of employment on March 23, 2011; that he is entitled to temporary total disability benefits from that date through the present and continuing; that he is entitled to payment of all medical, medication and transportation expenses; that the employer failed to reasonably controvert the claim or to pay benefits as required; and that the claimant is entitled to multiple penalties and attorney’s fees for failure to timely pay medical bills, medication expenses, transportation expenses, and weekly indemnity benefits. The judge assessed penalties totaling $8,000 and attorney’s fees of $8,000.
*126 ARGUMENTS
On appeal, the employer contests the court’s findings that the claimant met his burden of proof that there was an accident and that the employer did not reasonably controvert the claim. It also contests the amount of penalties and attorney’s fees awarded, and complains the court failed to recognize the parties’ stipulation to the claimant’s average weekly wage amount.[3] The employer asserts the claimant failed to meet his burden of proof that there was a work-related 19accident because there were no eyewitnesses to the accident; the claimant’s only favorable witness was his brother, who did not himself witness the accident; and the claimant did not report the accident until after he found out he was being reprimanded for an argument with another employee. Based on those facts, the employer contends it reasonably controverted the claim, had articulable and objective reasons and should not have been cast for penalties and attorney’s fees.
The employer does not dispute that the claimant is injured, but disputes that the injury is compensable.
In opposition to the employer’s arguments on appeal, the claimant asserts that he proved the occurrence of an accident by a preponderance of the evidence, considering his own testimony, his brother’s testimony, and the uncontradicted medical evidence. He contends his co-workers’ testimony should be given little weight because they were unable to remember the day’s events, even whether they had been working at breaking down the metal concrete forms, although both the claimant, his brother, and the supervisor, Bryan Monte, testified that the crew had been lifting the metal forms.
The claimant contends the employer’s arguments reflect a distorted view of the record. He testified in his deposition that his brother was working with him, but said at trial his brother was in the area at the time, but was not immediately next to the claimant when the injury occurred. The claimant said he was unsure which of the crew members he named as being on the job was actually helping him lift the particular form that caused the injury.
Further, he asserts his willingness to work — showing up on the day after he was injured dressed for work — cannot be construed as objective evidence of his ability to safely work, but only of his fear of losing his wages. The claimant | incontends the mere fact that he was dressed in work clothes has no bearing on the nature and extent of his injury.
LAW AND ANALYSIS
In a workers’ compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 630 So.2d 733, 737 (La.1994).
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review *127 where conflict exists in the testimony. [Citations omitted.]
Id. at 737-738.
“To be entitled to workers’ compensation benefits, the claimant must prove that there was a work-related accident, resulting in a disability that was caused by the accident. The claimant bears the burden of establishing this causal connection by a reasonable preponderance of the evidence.” Lachney v. Fertitta Excavating Contractor Inc., 07-885, p. 10 (La.App. 5 Cir. 4/15/08), 984 So.2d 887, 892.
Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.
In Maiurano v. Carriere-Stumm, Inc., 2007-0225, p. 2 (La.App. 4 Cir. 10/24/07), 970 So.2d 652, 654, writ not considered sub nom., Maiurano v. Carrier-Stumm, Inc., 2007-2267 (La.1/25/08), 973 So.2d 747, and unit denied sub nom., Maiurano v. Carrier-Stumm, Inc., 2007-2267 (La.3/28/08), 978 So.2d 306.
In a workman’s compensation suit, the employee must establish the work-accident causing the injury by a preponderance of the evidence i.e., “the testimony, as a whole, must show that more probably than the employment accident caused the disability.” The causal relationship may be inferred when there is proof of an accident and an ensuing disability without an intervening cause.
In evaluating the evidence, the trier of fact should accept as true the uncontra-dicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. [Citations omitted.]
West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979).
“A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.” West, 371 So.2d at 1149; Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977).
A worker’s testimony can be corroborated by testimony from workers, spouses, or friends. Nelson v. Roadway Exp., Inc., 588 So.2d 350, 353 (La.1991). “An accident at work can be proven by a claimant’s uncontradicted testimony, corroborated by the medical evidence. Testimony of fellow employees can also corroborate an accident which produces delayed symptoms of serious injury.” (Citations omitted.) Id. “The full consequences of a disabling accident are not | ^always apparent when the injury occurs.” Id. “Thus, an employee who finishes a day’s work without reporting an accident is not barred from recovering compensation.” Id. Here, as in the Nelson case, the claimant’s manual labor was sufficiently strenuous to *128 cause injury, and there was no evidence that anything else caused his disability. Id. at 353-354.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Only the factfinder can be aware of the variations in demeanor and tone of voice that bear heavily on the listener’s understanding and belief in what is said. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the Court of Appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present and a factfinder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Johnson v. Lee, 00-78, pp. 6-7 (La.App. 5 Cir. 5/30/00), 760 So.2d 1273, 1277, citing Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
Applying the jurisprudence to the facts here, in light of the workers’ compensation judge’s express findings on credibility of the witnesses, we find no basis to disturb the court’s ruling that the claimant was injured on the job as claimed.
Penalties and Attorney’s Fees
The workers’ compensation court awarded $8,000 in penalties (the statutory maximum) and $8,000 in attorney’s fees. The employer contends the amounts of the awards for penalties and attorney’s fees were excessive, unreasonable, and not supported by the evidence. The employer asserts the only basis for awarding a | ^penalty was the denial of the entire claim on the basis that there was no accident. It contends that only one $2,000 penalty should have been awarded for overall denial of the claim or, at most, $2,000 for failure to pay indemnity and another $2,000 for failure to pay medical expenses.
La. R.S. 23:1201(F) provides that failure to provide timely payment as set out in the statute shall result in the assessment of a penalty in an amount up to the greater of 12% of any unpaid compensation or medical benefits, or $50 per calendar day for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim. The statute provides further, however, that the $50 per calendar day penalty shall not exceed a maximum of $2,000 in the aggregate for any claim. Finally, the statute sets the maximum amount of penalties that may be imposed at a hearing on the merits, regardless of the number of penalties that might be imposed, at $8,000. The penalty subsection does not apply “if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201(F)(2).
The unambiguous language of La. R.S. 23:1201 clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. Unreasonably controverting a claim, which is the exception at issue in this case, requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration *129 and regard for facts and circumstances presented, or of seemingly unfounded motivation. Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern.
The phrase “reasonably controverted,” on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up | 14the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed.... If an employer or insurer reasonably controverts a claim and then becomes aware of information that makes his controversion of that claim unreasonable, he must then pay the benefits owed or be subject to penalties and attorney fees from that point forward. [Footnotes, citations and parenthetical quotations omitted.]
Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 8-10 (La.12/1/98), 721 So.2d 885, 890-91.
The purpose of imposition of penalties and attorney’s fees is to discourage indifference and undesirable conduct by employers and insurers. Awards of penalties and attorney’s fees in workers’ compensation eases are essentially penal in nature. The crucial inquiry in determining whether to impose penalties and attorney’s fees on an employer is whether the employer had an articulate and objective reason to deny benefits at the time it took action. The determination of whether an employer or insurer should be cast with penalties and attorney’s fees in a workers’ compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review. The fact that an employer is subjectively motivated to avoid paying compensation is not determinative. Neither is the fact that an employer loses a disputed claim. The crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action. [Citations omitted.]
Richert v. Schindler Elevator Corp., 11-1099, pp. 9-10 (La.App. 5 Cir. 6/28/12), 97 So.3d 487, 493, writ denied, 2012-1760 (La. 11/2/12), 99 So.3d 677.
| ^Considering the Reasons for Judgment given by the workers’ compensation judge, we are unable to find the court was manifestly erroneous in determining the employer here did not reasonably controvert the claim and, hence, that the claimant is entitled to statutory penalties and attorney’s fees.
As for the amount of the awards, the workers’ compensation judge obviously applied the maximum $2,000 penalty to each of the categories of payments that were not made — indemnity benefits, medical bills, medication expenses, and transportation costs — resulting in the total of $8,000. The employer argues there was no evidence at trial that any transportation payment or reimbursement was requested. *130 We find no merit to that argument, however, because the employer’s total rejection of the claimant’s claims and denial of any liability to him, contained in both the letter from the workers’ compensation insurer denying the claim, as well as the Answer to the Disputed Claim for Compensation, was a waiver of any further requirement of written notice or delay for the imposition of penalties and attorney fees. See Bushnett v. S. Farm Bureau Cas. Ins. Co., 271 So.2d 267, 271 (La.App. 3rd Cir.1972).
We find no manifest error in the court’s award of the maximum penalties for the employer’s refusal to pay the claimant. Similarly, we find the attorney’s fee award is not unreasonable. See Richert, supra.
The claimant has requested, via his appellate brief, an increase in the attorney’s fee award for defending this appeal.
“An increase in attorney’s fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiffs attorney, provided that the plaintiff requests such an increase.” Richert, 11-1099 at p. 11, 97 So.3d at 494.
11fiAn appellee who desires to have the judgment modified, revised, or reversed in part must answer the appeal. La. C.C.P. art. 2133(A). Where the appel-lee neither appeals from the judgment nor answers the appeal, but instead only requests the additional fees in brief to this Court, we cannot grant additional fees. La. C.C.P. art. 2133; Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428, 434 (La.App. 5th Cir.1989); Anderson v. Visa, Ltd., 478 So.2d 1346 (La.App. 5th Cir. 1985). Accordingly, the claimant’s request for additional attorney’s fees for this appeal is denied.
We note that the average weekly wage, as stipulated by the parties, is $453.38, not the amount mentioned in the Reasons for Judgment, and the workers’ compensation rate is $302.27.
Reasons for judgment are not part of the official judgment which the trial judge signs or from which appeals are taken. Blanke v. Duffy, 05-829, pp. 2-3 (La.App. 5 Cir. 3/28/06), 927 So.2d 540, 541; Parish of St. Charles v. Young, 99-411, p. 3 (La.App. 5 Cir. 12/15/99), 750 So.2d 276, 278. Therefore, we need not amend the judgment, because the average weekly wage amount was not included in it.
DECREE
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed against the appellants.

AFFIRMED

. The workers’ compensation insurer, The Gray Insurance Company, is also a defendant-appellant. We include it under the appellation ''employer.”

. Dr. Sudderth's report dated March 14, 2012, lists the diagnosis as lumbosacral sprain, lumbosacral HNP, lumbosacral radi-culopathy, cervical sprain, left shoulder sprain, and left shoulder derangement.

. In the Findings of Fact, the judge erroneously stated that the claimant's average weekly wage is $520.00, although the parties had stipulated that the average weekly wage is $453.38.