MARC E. JOHNSON, Judge.
|2In this workers’ compensation case, the employer, Crown Buick Pontiac GMC Truck, and Risk Management Services (collectively “Crown Buick”) appeal the trial court’s judgment awarding Claimant penalties and attorney fees on the basis they failed to reasonably controvert Claimant’s need for epidural steroid injections *280 (ESIs). For the reasons that follow, we affirm.
In the appeal before us, it is undisputed that Claimant, James Soniat, suffered a work-related back injury on February 16, 2012, while employed as an auto technician with Defendant, Crown Buick. In particular, Claimant was injured when he attempted to push a vehicle that he was repairing back onto a jack from which it had slipped. Crown Buick has paid workers’ compensation benefits to Claimant from the date of the accident through the present.
On August 28, 2013, Claimant filed a disputed claim for compensation in the Office of Workers’ Compensation, stating that Crown Buick had refused to approve ESIs recommended by his treating physician, Dr. Michael Zeringue. Claimant sought penalties and attorney fees as a result of Crown Buick’s repeated | .^refusals to approve the recommended medical treatment. After Claimant filed his disputed claim, Crown Buick requested an independent medical examination, which was scheduled by the court with Dr. Ralph Katz. Dr. Katz examined Claimant on December 11, 2013, and issued a report on the same day stating that he agreed that ESIs were warranted.
The matter came for trial on March 12, 2014. At the beginning of trial, the parties stipulated that Crown Buick had approved the ESIs for Claimant based on Dr. Katz’s report. Thus, the only issue for trial was whether Claimant was entitled to penalties and attorney fees for Crown Buick’s initial refusal to approve the requested medical treatment. Upon agreement of the parties, no live testimony was presented; instead, various exhibits were introduced, including Claimant’s medical records from his treating physicians. The trial court took the matter under advisement and rendered judgment on March 27, 2014. In its judgment, the trial court found that Claimant was entitled to the ESIs and that Crown Buick failed to reasonably controvert Claimant’s entitlement to the injections. As such, the trial court awarded Claimant penalties in the amount of $6,000 and attorney fees in the amount of $8,000. Crown Buick appeals the award of penalties and attorney fees.
The record shows that Claimant was seen by Dr. Lee Moss, an orthopedist, on May 1, 2012 with complaints of low back and right leg pain. Dr. Moss examined Claimant and opined that he suffered from a lumbar disc herniation. He prescribed Vicodin, a Medrol Dosepak and Lodine, and ordered a lumbar MRI. An MRI was performed on May 5, 2012, and showed a broad-based disc herniation at L4-5 with facet degeneration of L4-5 and L5-S1. During a follow-up visit on May 15, 2012, Dr. Moss noted that Claimant did not obtain relief from the Medrol Dosepak or Lodine and that he continued with right leg pain. On examination, Dr. |4Moss observed that Claimant had limited motion with low back pain. At that time, Dr. Moss recommended three lumbar ESIs.
Dr. Moss next saw Claimant two months later, on July 12, 2012, at which time Claimant relayed that he was not getting any better and was probably getting worse. He complained of low back and right leg pain. Dr. Moss noted that Claimant was now walking with a limp, had a tender sciatic notch, and positive straight leg raise maneuver on the right. Dr. Moss noted that the workers’ compensation carrier had denied the previously recommended ESIs on June 5, 2012.[1] Dr. *281 Moss’ medical notes state that he ordered the injections because Claimant was having too much pain to undergo physical therapy. He explained that he believed it was more prudent to try to reduce the pain so Claimant could undergo physical therapy in order to rehabilitate his condition and hopefully return to work. Dr. Moss reordered the ESIs and continued Claimant on Vicodin and Lodine.
Claimant returned to Dr. Moss on September 11, 2012, complaining of sharp pain in the left rib area after sustaining a fall when his right leg gave way. Dr. Moss determined Claimant’s fall was directly related to the giving way of his right leg, which was secondary to his low back injury. Dr. Moss again noted that the workers’ compensation carrier had denied the ESIs. As a result of his treatment plan being denied, Dr. Moss indicated that he was no longer able to render care to Claimant and referred him to a spine surgeon.
Approximately one month later, in October 2012, Claimant saw Dr. Alexis Wag-uespack, an orthopedic surgeon, with continued low back pain made worse by | ¡¡activity. Dr. Waguespack noted that Claimant had been taking various medications with no relief. She further noted that ESIs recommended by Claimant’s previous doctor had been denied twice by the workers’ compensation carrier. Dr. Waguespack opined that Claimant suffered from a disc bulge, degenerative disc disease and radiculitis. She continued Claimant on his medication and ordered a CT scan and bone scan to evaluate inflammatory changes, both of which were denied by Crown Buick.
In November 2012, Claimant again saw Dr. Waguespack with complaints of continued low back pain that radiated into his right leg and numbness in his left leg. At that time, Dr. Waguespack ordered physical therapy two to three times a week for six to eight weeks. Claimant started physical therapy on January 2, 2013. After 12 visits, he was discharged from physical therapy because he still complained of pain and was not experiencing any improvement.
In February 2013, Claimant returned to Dr. Waguespack again complaining of low back pain radiating down his right leg and numbness in his left leg. Dr. Waguespack noted that Claimant had not benefitted from physical therapy, and that he complained physical therapy had worsened his symptoms. As a result, Dr. Waguespack referred Claimant to Dr. Michael Ze-ringue, in pain medicine, and discussed possible surgery if Claimant did not improve with ESIs. In a follow-up visit to Dr. Waguespack on June 27, 2013, Claimant relayed that Crown Buick had approved the consultation with Dr. Zeringue for ESIs.
Claimant saw Dr. Zeringue on July 31, 2013 with complaints of severe low back pain, bilateral leg pain, and weakness in both legs. Dr. Zeringue noted that Claimant had tried physical therapy with no relief and recommended an ESI. Specifically, Dr. Zeringue recommended one ESI to see how Claimant responded. Crown Buick denied this requested ESI on August 9, 2013, specifically noting that | fithere was no evidence Claimant was suffering from radiculopathy. Because the recommended ESI was denied, Dr. Ze-ringue referred Claimant back to Dr. *282 Waguespack. Claimant returned to Dr. Waguespack on August 19, 2018, at which time Dr. Waguespack again recommended ESIs, increased Claimant’s medication, and discussed surgery if Claimant did not improve with the injections.
On August 23, 2013, Claimant appealed Crown Buick’s August 9, 2013 denial of the ESI to the Office of Workers’ Compensation Medical Director pursuant to La. R.S. 23:1203.1. Two days later, the Medical Director denied the requested treatment on the basis the required medical documentation had not been submitted. Claimant filed the instant disputed claim two days later.
The sole issue on appeal is whether the trial court properly awarded penalties and attorney fees for Crown Buick’s failure to approve the recommended ESIs.[2] Crown Buick argues that it followed all procedures established by the legislature and the Office of Workers’ Compensation relating to the approval of medical treatment and, therefore, it should not be penalized. Specifically, it maintains the ESIs were denied by its utilization review department and the Medical Director. Crown Buick notes that the ESIs recommended by Dr. Moss were denied after review by its utilization review because they were not warranted under the Medical Treatment Guidelines (MTGs) set forth in La. R.S. 23:1203.1. Crown Buick points out that the board’s decision was upheld by the Medical Director who agreed the recommended ESIs did not meet the MTGs. Crown Buick further points out that the ESI recommended by Dr. Zeringue was likewise denied by its utilization review department and the Medical Director. Crown Buick argues that it should not be punished for following the established procedures in denying medical treatment.
17An employer’s obligation to provide medical treatment to his injured employee is governed by La. R.S. 23:1201 et seq. Under La. R.S. 23:1201(F), an employer may be liable for penalties and attorney fees for his failure to authorize medical treatment except where the claim is reasonably controverted. Authement v. Shappert Engineering, 02-1631 (La.2/25/03); 840 So.2d 1181, 1186. Whether a claim is reasonably controverted depends on whether the employer or its insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time it refused to pay the benefit allegedly owed. Cortez v. East Jefferson General Hospital, 08-653 (La.App. 5 Cir. 1/13/09); 7 So.3d 707, 714, writ denied, 09-320 (La.4/3/09); 6 So.3d 775.
Awards of penalties and attorney fees under the Louisiana Workers’ Compensation Act are penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Jimmerson v. Johnson Storage & Moving Co., 13-962 (La.App. 5 Cir. 5/14/14); 142 So.3d 111, 118. The workers’ compensation judge has great discretion in the award of penalties and attorney fees and such discretion will not be disturbed on appeal unless clearly wrong. Id. at 119. Thus, the issue before us is whether the trial court was clearly wrong in finding Crown Buick did not reasonably controvert the ESIs recommended by Claimant’s treating physicians.
Crown Buick claims it relied on the MTGs in denying the ESIs. It maintains that because the MTGs did not provide for ESIs in Claimant’s case, it reasonably controverted the claim. Crown Buick further *283 suggests that because the Medical Director subsequently agreed with its decision, it cannot be liable for penalties and attorney fees.
|sThe MTGs were established pursuant to La. R.S. 23:1203.1 to assist with the medical decision making process for injured workers. Aisola v. Beacon Hosp. Management, Inc., 13-1101 (La.App. 4 Cir. 4/2/14); 140 So.3d 71, 74, n. 1. The guidelines provide a medical treatment schedule that addresses the frequency, duration, intensity, and appropriateness of treatment procedures and modalities for the treatment of work-related injuries and diseases. La. R.S. 23:1203.1(D)(4). Under La. R.S. 23:1203.1(1), medical treatment due by the employer to the employee is treatment in accordance with the medical treatment schedule or a variation from the schedule when a preponderance of medical evidence shows that such a variation is reasonably required to provide relief to the injured worker.
The applicable medical treatment schedule for Claimant’s low back injury is provided in La. Admin. Code, Part I, Title 40, § 2021. Subsection (H)(3) of § 2021 provides:
3. Injections — Therapeutic
a. Therapeutic Spinal Injections. Description — Therapeutic spinal injections may be used after initial conservative treatments, such as physical and occupational therapy, medication, manual therapy, exercise, acupuncture, etc., have been undertaken. Therapeutic injections should be used only after imaging studies and diagnostic injections have established pathology. Injections are invasive procedures that can cause serious complications; thus clinical indications and contraindications should be closely adhered to. The purpose of spinal injections is to facilitate active therapy by providing short-term relief through reduction of pain and inflammation. All patients should continue appropriate exercise with functionally directed rehabilitation. Active treatment, which patients should have had prior to injections, will frequently require a repeat of the sessions previously ordered (Refer to Active Therapy). Injections, by themselves, are not likely to provide long-term relief. Rather, active rehabilitation with modified work achieves long-term relief by increasing active ROM, strength, and stability. Subjective reports of pain response (via a recognized pain scale) and function should be considered and given relative weight when the pain has anatomic and physiologic correlation. Anatomic correlation must be based on objective findings.
| (Additionally, Subsection (H)(3)(b)(iii) specifically addresses indications for ESIs and . states,
(a). There is some evidence that epidural steroid injections are effective for patients with radicular pain or radiculo-pathy (sensory or motor loss in a specific dermatome or myotome). Up to 80 percent of patients with radicular pain may have initial relief. However, only 25-57 percent are likely to have excellent long-term relief.
(b). Although there is no evidence regarding the effectiveness of ESI for non-radicular disc herniation, it is an accepted intervention. Only patients who have pain affected by activity and annular tears verified by appropriate imaging may have injections for axial pain.
(Emphasis Added.)
The record shows that Claimant had an MRI in May 2012, shortly after his work-related accident, which showed a disc herniation at L4-5. Claimant’s medical records clearly demonstrate that he consistently complained of severe low back pain *284 with radiating pain into and weakness of his legs from the time of the accident through the time Crown Buick last denied the requested ESIs on August 9, 2013, incredibly stating there was no evidence of radiculopathy. Additionally, Claimant’s medical records show that Claimant underwent conservative treatment in the form of medication and physical therapy with no relief. We find this medical evidence clearly shows the recommended ESIs, as of Dr. Zeringue’s request in August 2013, was warranted under the MTGs. Thus, Crown Buick’s denial of the requested medical treatment was contrary to the MTGs.
The mere fact the Medical Director subsequently agreed with Crown Buick’s decision to deny the injections neither exonerates Crown Buick for its improper actions nor protects it from the assessment of penalties and attorney fees under La. R.S. 23:1201(F). The proper inquiry in determining whether to impose penalties and attorney fees on an employer is whether the employer had an articulate and objective reason to deny benefits at the time it took action; in other |10words, whether the employer reasonably controverted the requested medical treatment at the time of its initial refusal. See Salazar v. Command Const., LLC, 12-680 (La.App. 5 Cir. 3/27/13); 117 So.3d 118, 129, writ denied, 13-929 (La.5/31/13); 118 So.3d 399. At the time Crown Buick denied the requested medical treatment, on August 9, 2013, it was not relying on a decision by the Medical Director, but rather was clearly aware Claimant suffered from low back pain that radiated into his legs, and that medication and physical therapy provided Claimant no relief. Based on Claimant’s three treating physicians’ recommendations and the MTGs, the requested ESIs should have been approved upon Dr. Ze-ringue’s request.
Crown Buick also contends it reasonably controverted the requested ESIs by relying on a second medical opinion obtained from Dr. Gordon Nutik, who examined Claimant at Crown Buick’s request and determined ESIs were not needed. However, Dr. Nutik’s report was never introduced into evidence.[3] Thus, based on the record before us, we cannot say the trial court was manifestly erroneous in finding Crown Buick did not reasonably controvert the requested medical treatment.
Pursuant to La. C.C.P. art. 2133, Claim-' ant has answered this appeal requesting an increase in the attorney fees award for having to defend this appeal. An increase of attorney fees on appeal is warranted when the defendant appeals, obtains no relief, and the. appeal has necessitated more work on the part of the claimant’s attorney. Salazar, supra at 130. Accordingly, we award Claimant an additional $2,500 in attorney fees for the work done in connection with this appeal.
| ^DECREE
For the foregoing reasons, we affirm the trial court’s judgment awarding Claimant, James Soniat, $6,000 in penalties and $8,000 in attorney fees under La. R.S. 23:1201(F) for Defendant, Crown Buick’s, failure to timely authorize requested medical treatment. The record does not show *285 the trial court was manifestly erroneous in finding Crown Buick failed to reasonably controvert the claim. We further award Claimant an additional $2,500 in attorney fees for having to defend this appeal. Costs of this appeal are assessed against Defendant, Crown Buick.

AFFIRMED

. This denial was appealed to the Office of Workers’ Compensation Medical Director pursuant to La. R.S. 23:1203.1. On June 27, 2012, the Medical Director denied the re *281 quested ESIs on the basis the submitted clinical records did not note any conservative care such as physical therapy. The Medical Director further noted that the requested series of three injections was not warranted because an injection must show improvement prior to repeat injections.

. The amount awarded for penalties and attorney fees is not at issue in this appeal.

. While there is reference to two examinations by Dr. Nutik in Dr. Katz's IME report indicating Dr. Nutik did not believe ESIs were warranted, Dp Nutik’s reports are not in evidence and, thus, cannot be reviewed for reasonableness. Further, we note that the opinion of a claimant's treating physician is entitled to more weight than that of those doctors examining the claimant for consultation for litigation purposes only. Babin v. State Farm Mut. Auto. Ins. Co., 12-447 (La. App. 5 Cir. 3/13/13); 113 So.3d 251, 259; writs denied, 13-804 (La.5/24/13); 117 So.3d 103, and 13-808 (La.5/24/13); 117 So.3d 104.