MOLAISON, J.
*1294 In this worker's compensation case, Claimant, James Soniat, appeals the trial court's judgment denying him reinstatement of previously awarded indemnity benefits. For the reasons that follow, we affirm.
As we noted in Claimant's prior appeal in this matter,[1] it is undisputed that he suffered a work-related back injury[2] on February 16, 2012, while employed as an auto technician for Crown Buick Pontiac GMC Truck ("Crown Buick"). On August 3, 2017, in a Disputed Claim For Compensation filed by Claimant in Louisiana Worker's Compensation Court, District 7, Claimant asserted that he attempted to return to a light duty job at Crown Buick on April 13, 2017, but the continuing pain he experienced since his accident prevented him from performing the work. Claimant stated that his weekly benefits were terminated on April 13, 2017, in connection with the job opening at Crown Buick, and that when he requested the reinstatement of his weekly benefits because of his inability to meet the requirements of the light duty job, Crown Buick refused to do so. In addition to the reinstatement of his benefits, Claimant also asked the court to impose sanctions and award attorney's fees.
The matter came for trial on January 3, 2018. At that time, Claimant testified about his initial injury sustained at Crown Buick, his subsequent medical treatment, and the consistent pain[3] he experienced throughout his treatment that was exacerbated by certain movements. Claimant said that the cause of his pain could not be determined, but Dr. Waguespack, his treating physician, offered treatment in the form of steroid injections, which worked to a limited extent.[4] He also tried physical therapy, which he quit because it was too painful. Dr. Waguespack had recommended two different types of surgery to treat Claimant's pain, but Claimant had declined both. Claimant testified that his daily activities since the accident consisted mainly of housework, such as cooking or cleaning clothes.
With regard to his attempt to return to work at Crown Buick, Claimant stated that Dr. Waguespack signed a job analysis for him which said that she thought Claimant could perform a light duty job at Crown Buick that involved sitting continuously, with certain restrictions. Claimant testified that, while at the new job, he was in constant pain when he sat. He also walked and stood occasionally, but not without pain. Claimant explained that he was unable to drive continuously to Crown Buick, and needed to stop, get out of his car and stretch on the way there.[5] His extended *1295 commute sometimes took two hours, and he would arrive at the dealership in pain. At times, his leg would get so numb during the day that he would become unsure of whether he could drive home.
Upon returning to work, claimant's supervisor at Crown Buick was Cheryl Wright. Every day, Claimant reported to Wright that his pain got to a point where he could not take it anymore and had to leave. Claimant stated that he was never able to complete an eight-hour work day, and was never able to work two days in a row. He said summarily that he could not perform the light duty job at Crown Buick. Claimant continued to treat with Dr. Waguespack on a monthly basis, and was aware that Dr. Waguespack still believed that he could do the light duty job, despite his complaints about pain.
Claimant testified that his supervisors at Crown Buick made every effort to accommodate him. They switched out his office chair on request, and also had no problem with him standing, moving, walking and sitting as needed. Claimant's job was to call people on the phone who had some service done at the dealership and check on whether the customer was satisfied with the service. He did not take extra medication to perform the job.
Elier Diaz was accepted by the court, without objection, as a licensed Louisiana Vocational Rehabilitation Counselor who had worked with Claimant to find him a job. Diaz obtained Claimant's medical information from Dr. Waguespack and contacted Crown Buick, which expressed an interest in exploring the possibility of letting Claimant work in a new position. Diaz obtained the list of physical work restrictions, and a position was created for Claimant which was within the "sedentary level."[6] The job itself was to assist with a customer satisfaction index, and would allow Claimant latitude to be able to alternate sitting and standing and walking. Before anything else was done, a conference was conducted with Claimant's treating doctor, Dr. Waguespack, who verbally confirmed why she felt the physical aspects of a job were appropriate for Claimant.[7]
Diaz monitored Claimant at his job, and ensured that Crown Buick was meeting Claimant's requirements. When Claimant told Diaz that he was not able to physically accomplish the work, a second consultation with Dr. Waguespack was arranged at Diaz's request and Dr. Waguespack reiterated her opinion that Claimant could physically perform the job offered to him by Crown Buick. Diaz said that Crown Buick was willing to help Claimant to be successful *1296 and that the company was complimentary about the way Claimant performed his work for them.
Cheryl Wright testified that she held the position of the controller at Crown Buick. She worked with Diaz and Claimant to assist Claimant in his role as a customer service representative. Wright observed that Claimant did well as a customer service representative, and that the job was still available to Claimant as of the time of trial. Claimant last worked for Crown Buick in June of 2017.
At the conclusion of trial, the matter was taken under advisement. On February 20, 2018, the trial court rendered a final judgment in favor of Crown Buick, holding that Claimant "failed to prove by clear and convincing evidence that he is incapable of employment due to substantial pain" and, accordingly, "failed to prove that he is entitled to reinstatement of his indemnity benefits." Claimant's claim was dismissed with prejudice and each party was ordered to bear its own cost.
Claimant filed the instant appeal.
ASSIGNMENT OF ERROR
Claimant contends that the trial court erred in failing to reinstate his indemnity benefits and in further failing to award him penalties and attorney's fees.
LAW AND ANALYSIS
Factual findings in a worker's compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing and Sheet Metal , 96-2840 (La. 7/1/97), 696 So.2d 551, 556. The determinations by the worker's compensation judge as to whether the claimant's testimony is credible and whether the claimant has discharged his burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Bruno v. Harbert Int'l, Inc ., 593 So.2d 357, 361 (La. 1992).
The reviewing court is compelled to review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Wise v. H.B. Zachary Co. , 00-3 (La. App. 5 Cir. 4/25/00), 760 So.2d 500, 502. In applying the manifest error/clearly wrong standard, the appellate court does not determine whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Marange v. Custom Metal Fabricators, Inc. , 11-2678 (La. 7/2/12), 93 So.3d 1253, 1258-59 (citing Stobart v. State, DOTD , 617 So.2d 880, 882 (La. 1993) ).
Whether a claimant's pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Camardelle v. K Mart Corp., 04-224 (La. App. 5 Cir. 7/27/04), 880 So.2d 90, 93. Moreover, the issue of the severity of pain by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact on the basis of the preponderance of the medical and lay evidence. Pendleton v. Spartan Bldg. Const. , 432 So.2d 298, 300 (La. App. 5th Cir. 1983).
In Chaisson v. Cajun Bag & Supply Co. , 97-1225 (La. 3/4/98), 708 So.2d 375, 384, the Louisiana Supreme Court considered a similar issue of whether a worker's compensation claimant's complaint of pain in a light duty position was a sufficient basis upon which to find that she could not earn a certain percentage of her pre-injury wages. In that case, the claimant worked as a "finisher" for her employer, sewing *1297 fertilizer and sand bags while seated at a sewing table. The claimant was injured when she turned around to pick up a bag and felt something snap in her back. Subsequently, the employer offered to place the claimant "in a position that [she] could do"--namely, an accessory sewer position. The record demonstrated that the claimant's treating physician was of the opinion that the modified job was within the claimant's ability to physically perform, in spite of the claimant's assertion that her condition had worsened since the accident. Based on the record, the Court determined that the claimant had not met her burden of proving her entitlement to supplemental earnings benefits ("SEBs").
In Frazier v. Covenant Servs. Worldwide , 16-744 (La. App. 5 Cir. 5/31/17), 228 So.3d 1275, writ denied , 17-1125 (La. 10/27/17), 228 So.3d 1232, this Court relied, in part, on Chaisson, supra , when reviewing the denial of an injured worker's claim for SEBs.[8] The claimant in that case worked as a security guard when she suffered a rotator cuff tear in her right shoulder in the course and scope of her employment. Eventually, the claimant's treating doctor found that she had reached maximum medical improvement, and the claimant was released to work with certain restrictions. The claimant's doctor also specifically approved a Security Officer position that the claimant's employer had offered her. The claimant reported for duty only once, and left her shift because of reported pain in her back and neck. The claimant did not report to work again. Thereafter, the claimant filed a disputed claim for compensation contending that the employer and its insurer had unlawfully terminated her wage benefits. The trial judge denied her claim upon finding that the claimant had voluntarily quit her job with the employer and, therefore, the employer did not owe SEBs.
In affirming the trial court's ruling on appeal, we reasoned:
Here, Ms. Frazier's treating physician felt that the position, which Covenant offered and Ms. Frazier accepted, was within her physical capabilities, which included driving. Further, the record reveals that the new job was "within the claimant's or employer's community or reasonable geographic region," and was actually closer than her previous job. See Banks , 696 So.2d at 559. Thus, Ms. Frazier did not carry her burden of proving that the injury resulted in her inability to earn 90% of her pre-injury wages.
However, under La. R.S. 23:1221(3)(C)(ii), "if the employee establishes by clear and convincing evidence, ..., that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment." Thus, if Ms. Frazier had presented clear and convincing evidence that her pain prevented her from performing her job she would be "deemed incapable of performing such employment."
After trial, however, the court found that "claimant did not meet her burden *1298 of proof by clear and convincing evidence to establish her job with Covenant ... was not acceptable due to pain." Here, Ms. Frazier testified that she was capable of doing the job, if she did not have pain. As part of her return to work, Covenant allowed Ms. Frazier to bring her medical pain-reducing equipment - the "ice machine" - to use during her shift, which she did successfully during her first shift. Jill Delatte testified that she did not see Ms. Frazier's "ice machine" on the second night.
Further, the medical records reveal that her treating orthopedist, Dr. Savoie, felt that Ms. Frazier would always have some shoulder pain but that she could return to work with restrictions. In light of the evidence presented in the record, we cannot say that the OWC judge's findings were manifestly erroneous or clearly wrong. We find no merit in this assignment of error.
228 So.3d at 1279-80
In the instant case, the record demonstrates that Claimant's treating physician, Dr. Waguespack, concluded that Claimant had reached maximum medical improvement from his injuries[9] and, accordingly, he was released for a light duty position with certain restrictions. The position offered to Claimant by Crown Buick was a less strenuous sedentary position, and Crown Buick implemented all of the accommodations suggested by Dr. Waguespack. Claimant testified that the pain was too great to allow him to work at Crown Buick as a customer service representative; however, following a second consultation with Dr. Waguespack, she again found the position to be within Claimant's abilities. Under these facts, and in light of the holdings of Chaisson , supra , and Frazier , supra , we cannot say that the trial court's ruling that denied Claimant's claim for weekly benefits is manifestly erroneous. By extension, Claimant's prayer for attorney's fees and sanctions was properly denied by the trial court.
DECREE
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

Soniat v. Crown Buick and Risk Management Services , 14-489 (La. App. 5 Cir. 12/16/14), 166 So.3d 278.

In the prior appeal, we detailed that Claimant had been diagnosed by an orthopedic doctor with lumbar disc herniation.

Claimant described his ongoing pain as "stabbing," "constant," and radiating from the middle of his back down to his ankle.

At trial, Claimant's counsel introduced, without opposition, an exhibit containing Dr. Waguespack's records.

Claimant stated that the commute to Crown Buick was normally a 15-20 minute drive from his home.

Diaz testified that "sedentary" is the least physically demanding level, according to the U.S. Department of Labor.

Included in the exhibit of Claimant's medical records is a letter dated July 28, 2015 from Nurse Case Manager, Sharon Campo, to Dr. Waguespack which requests verification of details from a rehabilitation conference that took place on July 24, 2015. The letter recounts that on May 21, 2015, Claimant was placed at the Maximum Medical Improvement (MMI) which could be made without surgery. Also, a Functional Capacity Evaluation (FCE) was recommended for Claimant to determine his physical capabilities. This was based on Claimant's representation at that meeting that his symptoms were not severe enough to warrant surgery. Another document in the exhibit indicates that Claimant refused to perform 13 of the 20 tests in the FCE on July 15, 2015.
A verification letter dated August 14, 2015, from Diaz to Dr. Waguespack confirms Dr. Waguespack's opinion that Claimant "may return to work within the light level, as defined by the United States Department of Labor." Dr. Waguespack also confirmed that Claimant "should only engage in occasional bending, stooping, crouching, twisting, and crawling" and that he "may stand or sit for an entire workday provided he is allowed to alternate positions as needed."

The trial court in this matter referenced our holding in Frazier in its written reasons for judgment:
In Frazier , the Fifth Circuit found that claimant did not "present clear and convincing evidence that her pain prevented her from performing her job." Supra [sic]. The facts are similar in this case. Claimant's treating physician, Dr. Waguespack, released him to light duty employment. Dr. Waguespack was aware of Claimant's complaints of numbness, weakness, and radiating pain. However, she indicated that he could work with restrictions. She indicated that he could sit continuously, walk occasionally, stand occasionally, and reach and handle items.

Similarly, Claimant's medical records show that Dr. Najeeb Thomas of the Spinecare Medical Group, wrote a letter on May 30, 2016, to Adjuster Magdelon Blanchard of Risk Management Services, which provided a report of his "second opinion" following an examination of Claimant. In relevant part, Dr. Thomas found that Claimant's "MRI findings do not correlate to his pain" and, "[Claimant's] main problems are subjective complaints." Dr. Thomas agreed with Dr. Nutik that Claimant could do light duty work with limitations and concluded that Claimant likely reached MMI approximately six months after his accident.